H. J. C. CHAMBERS, Adm'r, v. WESTERN NORTH CARO-
LINA RAILROAD COMPANY.

*Negligence—Railroads—Damages.*

A servant cannot recover damages of the employer for an injury
resulting from the alleged negligence of the latter, when the ser-
vant's want of ordinary care contributes to the injury, or where
by the exercise of such care he might have avoided the injury.
The facts of this case show that the brakeman, the plaintiff's
intestate, was guilty of contributory negligence in attempting to
board the train while in motion.

(*Farmer* v. *Railroad*, 88 N. C., 564, cited and approved.)

CIVIL ACTION tried at Spring Term, 1884, of IREDELL
Superior Court, before *Shipp*, J.

The action is brought to recover damages for alleged neg-
ligence on the part of defendant in causing the death of
Otho Chambers (the intestate of plaintiff) who was a brake-
man in the service of the company.

The plaintiff introduced one Horah who testified that on
the night of the accident he was a brakeman on defendant's
train; that the train ran into Newton, a depot on the road,
and then backed out to the main line at the " Y " about
midnight and was going west; the intestate was also a
brakeman on same train, whose duty it was to open and
close the switch, when the train backed out; the night was
dark, and it had been raining and the ground was muddy;
the intestate left the train, as it backed out, to adjust the
switch, and the witness remained on the train; it was run-
ning at the rate of four or five miles an hour when the wit-
ness saw the deceased about twenty feet east of the switch
with a lantern in his hand; he saw him approach the train
and then saw the lantern suddenly go out; the alarm sig-

nal was immediately given and the train stopped in about the length of four cars.

The witness further testified that he went back and found the deceased in the ditch by the track, with one leg badly crushed—it was about the spot where he saw deceased before this. The deceased said that as the cars were passing he tried to get on, and his foot slipped and he fell. It was admitted that deceased died of his wound, and that plaintiff was his administrator.

In answer to plaintiff's question, " When ought deceased to have gotten on the train?" he said, he ought to have gone to the car before it started, and he further testified that the rules of the company, which were known to the deceased, required him to come back to and get on the train before it started. Witness said it was his (the deceased's) duty, after he boarded the train to give his signal with his lantern to the engineer to start; that the engineer should not start until the switchman gave the signal. The deceased did not come back to the train before it started; train always starts at switch when switchman gives signal.

Another witness of plaintiff testified that he understood the rule to be that the switchman after closing the switch should walk down to the train and get on and report to the conductor, and that the conductor would give the signal to start.

The defendant's witnesses all concurred that the rule required the switchman to get on the train after the switch was closed, and before the train began to move.

The fireman of the engine testified that as the train backed out the deceased was at the switch, and asked witness for a chew of tobacco; that when the train stopped in the switch the deceased instead of going back to the train, remained at the switch and gave the signal with his lantern to advance, and called to the engineer to hurry up;

that as the train passed out by deceased, the witness gave the deceased the tobacco at the switch, and did not see him any more until the train was stopped. Conover depot, all the witnesses testified, was in 250 yards of the switch, and that the train always stopped there after leaving the switch, and did so that night—it was a regular station.

A witness of defendant testified that deceased. said just after he was injured, " I tried to catch to the two iron rods and missed one and the motion of the train turned me under the cars."

The conductor of the train was asked by plaintiff, if he was in supreme command of the train, and he answered, " yes ; " but the engineer was equally responsible in the running of the train, and in this respect had control of all except the conductor.

On his examination by defendant, the conductor testified that his duties were

" To look after the passengers, take up tickets, see that train kept on time, that lamps and signals were in order, that he was subject while running to the orders of the train dispatcher, superintendent and president ; that he had no right to employ hands or discharge them, that he could suspend them temporarily and report to the superintendent, who had the power to discharge them or not; that he had no power to purchase materials, that when he reached the terminus of the road he left the train and had no further control of the cars, that he and the engineer were equally responsible for the correct running of the train." The conductor's character was admitted to be good.

There was evidence tending to show that the intestate was thirty-nine years old and healthy, and his wages $15.00 per month, and good character for industry.

When the evidence closed His Honor intimated an opinion that upon the whole case the plaintiff was not entitled

to recover, and said he would so instruct the jury.. Whereupon the plaintiff took a non-suit and appealed.

No counsel for plaintiff.

*Messrs. D. Schenck* and *Reade, Busbee & Busbèe,* for defendant.

ASHE, J. The intestate of the plaintiff was a switchman on the Western North Carolina railroad, and it was his business, when the train ran back from Newton down to the " Y " into the regular track, to change the switch so that the train might proceed in its regular course.

The train, at the time the plaintiff's intestate was injured was running west and the switch where the accident happened was about 250 yards east of Conover station, which was a regular station.

The witnesses for the plaintiff disagreed as to whose duty it was to give the signal to the train to move on after closing the switch, but all the witnesses for the defendant concurred that the rule required the switchman to get on the train after the switch was closed and before it began to move. The train necessarily must have stopped after passing through a switch like that, where it had to back down the main track and then change its course. It was at this point, according to the evidence, it was the duty of the deceased to have got on the cars—the witnesses concurring that it was the rule of the company after the switch was closed for the switchman to go down the road and get on the cars while they were stationary, and as a servant of the company it was his duty to obey its rules. Pierce on Railroads, 378, note 3.

But the deceased violated this rule, for after he had closed the switch, and the cars had backed down the main track to where they stopped for retrograde movement, the deceased, instead of going down to where they had stopped, in

compliance with the rules of the company, remained near the switch, and waived his lantern for the engineer to advance, and we must infer that the train was delayed longer than usual at the switch before reversing its course, for the switchman, while waiving his lantern for the train to advance, called out to the engineer to "hurry up," as if there was some delay of which he was impatient.

As the train passed him he attempted to get aboard. The night was *dark and the ground muddy,* and although the train is said to have been running at the speed of only four or five miles an hour, yet it was moving at a rate sufficiently fast, as the deceased said to one witness, to throw him around under the cars on his missing to catch one of the iron rods.

What was this but gross neglect on the part of the deceased? If he had gone back to the train when it stopped near the switch, or had walked up to Conover station, where the train always stopped and did stop that night, he could have reached it by walking at an ordinary pace, and could have got aboard while it was motionless.

There was no danger of his being left, and no necessity for him to take any risk.

When there are two modes left to a party for performing his duty, one of which is safe and another exposes him to danger, and he takes the latter as a matter of choice, he cannot complain if he sustains an injury. Pierce on Railroads, 378, note 2. In doing so he contributes to the injury, and is the proximate cause thereof. "The servant cannot recover, if his own want of ordinary care has contributed to the injury, or when, by the exercise of ordinary care, he might have avoided it." * * His negligence may consist in a reckless exposure of himself, as in an attempt to get on a train when running at a speed which makes the attempt dangerous. Pierce on Railroads, 737, and the numerous cases there cited in support of the posi-

tion. The rule under this head is that the plaintiff cannot recover damages, if the injury could have been avoided by the exercise of ordinary or reasonable care on his part.

It makes no difference if the injury was caused partly by the negligence of the defendant, if with ordinary care it could have been avoided by the plaintiff. In *Butterfield* v. *Forrester*, 11 East., 66, which is a leading case, it was held that, " although A has been injured by B's negligence, A may not maintain an action against B for the damages, if A could have avoided receiving the injury by the exercise of ordinary care on his part."

And again in *Robinson* v. *Cone*, 22 Vt., 213, it was declared that in order to sustain an action for negligence of the defendant, whereby the plaintiff is alleged to have sustained an injury, it must appear that the injury did not occur from any want of ordinary care on the part of the plaintiff in whole or in part. Upon same point is *Farmer* v. *Railroad*, 88 N. C., 564.

In this case it is too manifest that the plaintiff's intestate came to his death by his own reckless act in attempting to board the train while in motion, which he could have avoided by the exercise of the ordinary care which is usually employed by men of common prudence.

The plaintiff is, therefore, not entitled to recover in this action, and the judgment of the superior court is affirmed.

No error.                Affirmed.