The plaintiff testified that he was at Macon depot on or about 25 November, 1889, and purchased a ticket from Macon to Vaughan, from Rodwell, agent of the defendant. "In a few minutes the local freight came to Macon. Rodwell asked me if I was going off on that train, and I told him I was. He said to me that I had better get on; that the train would leave pretty soon. I asked Rodwell if it was not the duty of the company to pull the passenger coach to the platform. The conductor (Lassiter) said if I rode on that train at all I would have to go where the passenger coach was then standing and get on, or I would be left. Then the conductor went to the passenger coach and waved his engineer to go ahead. When I reached the coach it was slowly moving. After stepping on the coach and having a good footing, the sudden jerk of the train, with the weight of a valise in my right hand, threw me off my balance and caused my injury. I struck my leg against some part of the car step. The jerk of the train was caused by the engineer's putting on steam. I was incapacitated from my business for about five months. *Page 26 
(36) The coach was barely moving. I didn't think there was any danger. I knew that if a man jumped on a moving train it was at the risk of his life."
Robert fisher, a witness for the plaintiff, testified: "I was at Macon depot on the day the injury occurred. I saw the conductor, agent, and plaintiff, and heard conversation between depot agent and plaintiff. Rodwell, the agent, said to plaintiff, `Are you going down on this train?' Plaintiff said, `Yes.' Rodwell said, `You had better be getting on, as it is going away.' Plaintiff said to agent Rodwell that he thought that it was the duty of the company to pull the passenger coach up to the depot; that he did not feel disposed to walk fifty or a hundred yards to get on the coach in the mud. The conductor, being present, said to the plaintiff, `If you are going on this train you had better go ahead and get on. We are going away.' Plaintiff started up the track to the coach, and when he was in two or three cars of the passenger coach the conductor waved the engineer ahead, and signaled him to go away. The conductor got on the train while it was moving. When the plaintiff got on the passenger coach the train had moved the length of two or three cars. The conductor got on the rear end of the coach, and he was not hurt. I saw the plaintiff at the time he stepped on the coach. The engine at this time gave a sudden jerk and increased its speed. I saw plaintiff get on the train, and the train go on to the next station. The passenger coach was 75 or 100 yards from the passenger station."
John Harris, a witness for the plaintiff, testified: "I was at Macon the day of the occurrence. Saw the conductor and the agent of the defendant company. Plaintiff told the conductor he wanted to go to Vaughan station on the freight. The conductor told the plaintiff that he was a little behind, and to go back and get on the coach. Plaintiff made for the coach. I did not see him get on the coach. The passenger coach was 50 or 60 yards from the passenger platform. It was a long train, the local freight."
(37) It was admitted that the train was a mixed one, with passenger coach attached.
Fred Yancey, a witness for the plaintiff, testified: "I was at Macon depot the time plaintiff was injured. I saw the plaintiff there, and heard the conductor tell the plaintiff if he was going it was time he was getting on the car. The plaintiff asked if the passenger coach was coming any nearer. The conductor told him no. The plaintiff went toward the passenger coach, but I did not see him get on. He had gotten within two or three car-lengths of the passenger coach when the train began to move."
This was all the evidence for the plaintiff as to the manner in which the accident occurred. *Page 27 
J. W. Lassiter, a witness for the defendant, testified: "I am a conductor of the defendant. On 25 November, last, I was a conductor on the local freight train, which has a passenger coach attached. The passenger coach on the freight train is in the rear of the train. It does not stop at the passenger platform, as this would take four or five minutes at each depot, and there are nineteen depots on the road. I recollect the day on which the plaintiff claims to have been injured. The passenger coach was seven or eight car-lengths from the platform. The train stopped at Macon that day not less than fifteen minutes. Just as soon as we load and unload the train, we leave just as soon as possible, so as to make the schedule. It is a hard schedule to make. I did not swear at or use bad language to the plaintiff. When I hallooed, `All right,' to the hands my attention was called to the fact that a passenger was to go. The hands signaled the engineer ahead. I said to the passenger that we had been there fifteen minutes; time enough to get aboard the train. He got up. I do not remember any other conversation with the passenger. I got on the front end of the car, the plaintiff on the rear end. The plaintiff was at the freight platform when I saw him. He said nothing to me of being injured. I told the plaintiff that I would not stop any more after starting. When I got on the train I felt no jerk (38) more than common. I think that I can state positively that the train did not jerk. To the best of my recollection it did not. I never saw posted any rule that passenger coach on the local freight would not stop at the passenger platform."
John E. Rodwell testified: "I am the agent of the defendant at Macon. The passenger coach on the local freight train stops at no particular place. It does not pull up to the passenger platform for passengers to get on. I have sold tickets to the plaintiff to go as a passenger on the local freight train before the accident. I remember the day the plaintiff claims to have been injured. The train came there a little late, and after loading the train, which took some fifteen minutes, plaintiff said that he wanted to go on that train. The conductor said to the plaintiff that if he wanted to go on that train he had better get on. The passageway between the point where plaintiff was and the passenger coach was in good condition. There were no obstructions in the way. I have frequently, prior to the time of the alleged accident, sold tickets to the plaintiff to travel on the local freight train. On these occasions I cannot state positively that the passenger coach did not pull up to the passenger platform."
J. L. Coleman, a witness for the defendant, testified: "I remember the time that plaintiff says that he was hurt. I saw the plaintiff get on the train. It was moving as fast as an ordinary man would run. I did *Page 28 
not see Robert Fisher there. Plaintiff apparently got on the train very well. I did not see him stumble. When plaintiff got on the train it was going at a right good rate of speed. He had his valise in his hand."
The following prayers for instructions were, among others, submitted by defendant:
"That there is no evidence of negligence, and the jury will answer the first issue `No.'" This was refused, and the defendant excepted, and assigned the refusal as error.
"That upon the whole evidence the plaintiff has contributed by (39) his negligence to the injury, and the jury will answer the second question `Yes.'" This was refused, and the defendant excepted, and assigned such refusal as error.
"That if the jury believe from the evidence that the plaintiff was under the influence of liquor when the accident occurred, and for that reason was not as well able to provide for his safety, and that the accident would not have occurred had the plaintiff been entirely sober, then he has contributed to the injury, and the jury will answer the second issue `Yes.'" This was not given in this form, and, as the defendant contends, not in substance, and the defendant excepted and assigned the same as error.
"That even if it had been the duty of the defendant to stop its train at the platform, and although the jury should find that it failed in that duty, yet the plaintiff was not justified in attempting to board the moving train, but he should have remained at the station; that by attempting to board the moving train the plaintiff took all the risk of injury, and cannot recover in this action." This was refused, and the defendant excepted and assigned the same as error.
"That if the jury shall believe that the cars of the defendant stopped at the station long enough for the plaintiff to have gotten on board while they were stationary, and that the passageway from the depot building to the car was open and safe, and that instead of getting on the car the plaintiff loitered around the station until the cars were in motion and then attempted to get on them while the train was going as fast or faster than a man could walk, then he has contributed to his injury, and the jury will answer the second issue `Yes.'" This was not given in this form, and the defendant excepted, because it contends that it was not substantially given, and assigns the same as error.
"That while getting on a moving train is not negligent under all circumstances, yet the plaintiff must show that under the circumstances it did not appear dangerous, and must also show some good reason (40) for doing so, and for not getting on the train while it was stationary." This was refused, and the defendant excepted and assigned the same as error. *Page 29 
"That there is no evidence in this case of such facts and circumstances as would warrant the plaintiff in getting on the moving train." This was refused, and the defendant excepted and assigned such refusal as error.
In lieu of the charge asked, the judge instructed the jury as follows:
"If you should find from the evidence that the conductor of this train was told by the plaintiff that he wished to go on that train, and that upon being so told by the plaintiff he (the conductor) told him to go and get upon the passenger coach; that thereupon the plaintiff proceeded to do as directed, but before he could get to and on the coach the conductor signaled the engineer to go ahead, and the train was thus put in motion before the plaintiff could get on the coach, and the plaintiff was injured in the attempt to get on, then the defendant would be guilty of negligence." To this charge the defendant excepted and assigned the same for error. "It was the duty of the defendant to stop its train at the depot a sufficient time to enable passengers to get on its passenger coach, but if the defendant's train had already been at the depot a sufficient time for this purpose, it was not under any legal obligation to remain any longer for this purpose, although passengers might arrive and give notice of an intention to get on board.
"If you should find that the defendant's train, having been at Macon depot a sufficient time to take on passengers, upon the plaintiff's notifying the conductor that he desired to take passage on this train, the conductor told him that he would not delay or stop the train, and thereupon gave the signal for the train to move, then, nothing else appearing, the defendant would not be guilty of negligence.
"If you should find from the evidence that the plaintiff got on (41) the coach under the directions of the conductor, and, after getting on the platform of the coach, was injured by a sudden and unusual jerking, then the defendant would be guilty of negligence." To this charge the defendant excepted and assigned the same as error.
"If you find from the evidence that the conductor directed the plaintiff to get on the moving train, then if the plaintiff was injured in obeying such instruction, then the defendant was guilty of negligence." To this instruction the defendant excepted and assigned the same as error.
"If the jury should find that the plaintiff was injured while attempting to get on a moving train, the plaintiff is guilty of contributory negligence, unless the jury shall find that the conductor of the defendant directed him to do so, or unless they shall find that there was no such apparent danger as would prevent a prudent and sensible man from so attempting to get on." To the qualifications of this charge the defendant excepted and assigned the same as error.
There was a verdict for the plaintiff, and the defendant appealed. *Page 30 
At the request of the defendant, the court instructed the jury that the failure and refusal of the conductor to cause its passenger coach attached to its freight train to be drawn up to a point opposite the passenger platform was not negligence. The plaintiff did not except, and it is insisted that the question whether it was a reasonable regulation to require passengers to get on board the train at a point so remote from the place used for passenger trains is now so far eliminated in the discussion of the defendant's appeal that it cannot be considered even in determining whether on the one hand there was, as insisted by the defendant, no evidence of negligence on the part (42) of its agents or servants, or whether on the other there was undisputed testimony showing that the proximate cause of the plaintiff's injury was his own contributory negligence. This case must be distinguished from Rose v. R. R., 106 N.C. 168, and Pickens v. R. R., 104 N.C. 312, because the defendant company relies, among others, upon two exceptions, the consideration of either of which necessarily involves a review of all of the evidence tending to show negligence on the part of the defendant company. We cannot determine whether there was any evidence of negligence on the part of the defendant and eliminate from the discussion the question whether, in the exercise of ordinary care, the passenger coach should have been drawn up to the platform, because the plaintiff contends that the court should have instructed the jury that the defendant was negligent in failing to give passengers an opportunity to get on at the platform. In passing upon the other exception also, it is insisted for the plaintiff that, though it may have appeared that he was negligent in waiting till the train was in motion before attempting to get on it, still the injury would have been avoided if the passenger coach had been stopped at the station.Deans v. R. R., 107 N.C. 686. In both of the cases mentioned, the exceptions considered were addressed to questions growing out of particular portions of the testimony — not to the whole of it — and raised only the point whether there was undue force used in expelling a passenger.
It was not an unreasonable regulation of the company to require passengers to be received upon a coach attached to a freight train at some point other than the station or platform from which they usually enter its passenger cars, constituting a part of its passenger trains, but the space or route ordinarily traversed from the office where the ticket is procured to the place appointed for embarking should be kept in safe condition for transit, and passengers have a right to act upon the *Page 31 
presumption that such way may be traversed without danger due to its defects. 2 Wood R. R., p. 1128, sec. 305; Hurlburt v. R. R.,40 N. Y., 145; Green v. R. R., 11 Hun (N. Y.), 333. (43)
Our statute (The Code, sec. 1963) is, in so far as it affects this question, an affirmance of the general principle, as it requires railroad companies to run their trains of cars for the transportation of passengers and property at regular times, to be fixed by public notice, and carry such passengers as shall be offered "within a reasonable time" at "the place ofstarting, the junctions of other roads, and the usual stopping placesestablished for receiving and discharging way passengers and freights forthat train." In the plainest terms the law recognizes the right of the companies to determine their places of receiving and discharging passengers for each train, subject only to the proviso attached by law to which we have adverted. If the plaintiff's injury was not caused by the failure of the defendant to use ordinary care in looking after the condition of the way from the ticket office to the cars, it incurred no liability by refusing to receive the plaintiff at the platform.
The general rule is, that passengers who are injured while attempting to get on or off a moving train cannot recover for the injury. Phillips v. R.R., 49 N.Y. 177; 2 Beach L. R., sec. 987. But, of course, this, like all other general rules, is subject to some exceptions. Where a train is stopped at a station, and after passengers are told to go aboard it is suddenly started before they have had time to do so, and when, without unreasonable delay, they are trying to get upon it, if a passenger who is in the act of getting upon the platform is injured by the sudden jerk of starting without a signal, the court may submit the question of negligence to the jury, but the company is under no obligation to delay the departure of the train beyond the usual time because a passenger has purposely or negligently deferred getting on it till the last moment, though he has had abundant time to do so while it was standing still. Thompson on Cor. and Par., p. 225, sec. 16.
In running its trains the officers of a company ought always to (44) be mindful of the fact that in order to insure the safety and subserve the interests of its patrons and accomplish the ends for which it was created, the corporation must move its trains, as far as possible, regularly and systematically. Hence the statute which we have already cited affirms another common-law principle in limiting the obligation to receive passengers to those who are offered or offer themselves within reasonable time.
The company would in any event be liable for an injury wantonly or purposely inflicted by its officers. If the conductor saw the plaintiff approaching the train at his suggestion or invitation, and purposely gave the signal to move when he was in the act of ascending the steps of *Page 32 
the platform, the company was liable for any injury sustained by the latter. But when the train had been stopped for the usual time, unless the number of passengers who debarked or embarked at the station was so great as to require a longer stop in order to insure the safety of its patrons, the conductor, though he had told a dilatory passenger that he must not get on at a certain point, was not bound, in order to relieve the company of liability, to look after his movements and refrain from giving the signal to the engineer to move until assured that he was seated on board the train.
We think that there was error in the failure of the court, in response to the request of the defendant, to present clearly to the jury the well established principle that, after holding the train long enough to disembark and receive passengers, the conductor was not bound to look to the safety of the plaintiff (though he may have told him he ought to get on) and to delay giving the signal till he saw the plaintiff enter the coach.
The company would have been liable, unquestionably, if the invitation of the conductor to get on the train had been extended when the train was already in motion instead of before giving the signal to leave at the usual time. It is equally clear that the jury might have been misled (45) by the statement of the law in reference to contributory negligence by the court. The judge should have told them, as requested, that the fact of getting on a moving train was, as a general rule, evidence of contributory negligence, and that proposition should have been stated without qualification other than such as was manifestly suggested by and applicable to the evidence in the case at bar. 2 Beach R. R., sec. 987; 2 Wood's R. R., 1154; Wharton on Neg., sec. 369. From the plaintiff's own testimony it appears that he was first warned by Rodwell, the defendant's agent, to get on the train, and notified that it would leave soon, but instead of acting on the suggestion of the agent he manifested a disposition to stand upon his supposed legal rights. The conductor (Lassiter) then said, according to plaintiff's own statement, that if he "rode on that train he would have to go where the passenger coach was thenstanding." This language could not be fairly construed as a command to get on the train, but it was simply a warning that he must comply with the regulation "if he rode on that train." The plaintiff was prima facie
negligent in getting upon a moving train, and in order to relieve himself of the onus placed upon him, ought to have shown either that he went in obedience to an unequivocal invitation or command not to get upon a train standing still, but already in motion, and in obeying the order or accepting the invitation he did not expose himself to manifest danger, or that the conductor did not stop at the station a sufficient time to allow passengers to get on and off. Wharton on Neg., *Page 33 
sec. 369. After admitting that he got upon a moving train, the burden was upon the plaintiff to bring himself under some exception to the general rule that such conduct is contributory negligence and will be deemed the proximate cause of any injury received in doing so. Malcom v. R. R.,106 N.C. 63; 2 Wood R. R., p. 1126, sec. 305; 2 Beach R. R.,supra; Chambers v. R. R., 91 N.C. 471; Smith v.R. R., 99 N.C. 241.
Upon the plaintiff's own testimony, or upon a review of the whole testimony, there is no such evidence of a command as to (46) warrant the charge given by the court or to go to the jury as tending to show that the injury was not caused by the plaintiff's own negligence in getting upon the train while in motion. There is no testimony tending to show that by the exercise of ordinary care the defendant could have prevented or avoided the injury.
If it were necessary, we might rest our ruling upon the additional ground that the instruction given to the jury in reference to the question whether the plaintiff's injury was proximately caused by intoxication and consequent inability to get upon the car with his valise in hand was not fully responsive to the request of defendant. But it is unnecessary to discuss that question, as it is to advert to the exception that there was no evidence to warrant the charge predicated upon the ground that the injury might have been caused by an "unusual jerk" in starting the train.
There was error, for which a new trial must be granted.
Error.
Cited: Burgin v. R. R., 115 N.C. 674; Tillett v. R. R., 118 N.C. 1046;Johnson v. R. R., 130 N.C. 490; Denny v. R. R., 132 N.C. 345;Dortch v. R. R., 148 N.C. 579; Thorpe v. Traction Co., 159 N.C. 37, 38;Carter v. R. R., 165 N.C. 250.
(47)