J. T. DORTCH, ADMINISTRATOR OF GURNIE L. WIGGINS, DECEASED,
v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 28 October, 1908.)

1. **Issues, Sufficient.**

If issues are sufficiently definite to afford each party to the
action opportunity to introduce all pertinent evidence and apply
it fairly, they are as a rule unobjectionable.

2. **Railroads—Dangerous Spur Tracks—Negligence.**

It is the duty of a railroad company to keep its sidings and
spur tracks in a reasonably safe condition for the traffic done
over them; and when in the discharge of his duties an employee
is killed by reason of a derailment of the car on which he was
engaged, caused by the rails being out of alignment, a *prima
facie* case of negligence is established.

3. **Railroads—Employer and Employee—Dangerous Spur Tracks—
Moving Cars—Contributory Negligence—Proximate Cause.**

Contributory negligence on the part of deceased employee in
not fastening the brakes to a car before endeavoring to couple
it to the engine on a down grade spur track, and jumping upon
the car in order to save it when it was in rapid motion, is not
the proximate cause of his death, when it appears that the death
resulted from a derailment, owing to the fact, unknown to de-
ceased, that the rails were out of alignment.

4. **Same—Questions for Jury.**

While, ordinarily, jumping on or off a moving car is such con-
tributory negligence as will bar a recovery for injuries received,
it is for the jury to say whether a man of ordinary prudence
would under similar circumstances have done so, when it appears
that the car on which plaintiff was engaged in the course of
his employment was derailed, owing to the unsafe condition of
the spur track, unknown to him, and he jumped from it when
he suddenly found himself in a dangerous position as it was
leaving the track, though subsequent developments may show that
he otherwise would not have been injured.

ACTION tried before *Biggs, J.,* and a jury, at April Term,
1908, of WAYNE, brought to recover damages for the alleged
negligent killing of plaintiff's intestate while in defendant's
service, on 7 March, 1907.

These issues were submitted:

1. "Was the plaintiff's intestate killed by the negligence of defendant, as alleged in the complaint?" Answer: "Yes."

2. "Did the plaintiff's intestate, by his own negligence, contribute to his death, as alleged in the answer?" Answer: "No."

3. "What damages, if any, is the plaintiff entitled to recover?" Answer: "Five thousand dollars."

From the judgment rendered defendant appealed. The facts are sufficiently stated in the opinion of the Court by *Justice Brown.*

*W. T. Dortch, Shepherd & Shepherd* and *J. D. Langston* for plaintiff.

*Aycock & Daniels* for defendant.

BROWN, J. It is useless to comment on the exception to the refusal of the court to submit the issues in the form presented by defendant.

The issues as framed are sufficient to present to the jury every defense that has been made in this case or that is likely to be made in cases of this kind.

If issues are sufficiently definite to afford each party to the action opportunity to introduce all pertinent evidence and apply it fairly, they are as a rule unobjectionable. *Black v. Black,* 110 N. C., 398; *Pretzfelder v. Insurance Co.,* 123 N. C., 164.

The evidence in this case was all offered by plaintiff, and tended to show that plaintiff's intestate was conductor in charge of the switching train of the defendant at Rocky Mount on 7 March, 1907. He had a car of stone to be placed on the spur track for the use of the Rocky Mount Mills. There were two spur tracks there. The car of stone was to be placed on the spur track going down to the river. The stone car was shifted onto the spur track and left there a short time, while the other cars in the train were placed on the upper track.

Then the engine came back to couple to the car of stone. When the conductor left the car of stone he failed to tie the brakes. His attention was called to this before he attempted to couple, and he was told that in the event he missed coupling the car it would go into the river. Notwithstanding this, he attempted to make the coupling without fastening the brakes, saying that he could make the coupling. He scotched the car with wood and signaled the engineer to move back cautiously. The engineer did move cautiously, but the car, being on a curve, failed to couple, and the car jumped the wood scotch and moved a few feet. The conductor was again told to apply the brakes. He got some wood and scotched the train, but did not apply the brakes, saying that he would make the coupling that time. The second attempt failed, and the car jumped all the scotches, and by that time, to use the language of the witness, "had such momentum that no brake could have stopped it." The conductor and one of his brakemen jumped on the moving car to apply the brakes. Following the language of plaintiff's witness, "He did apply them, but the application did no good. I was watching him and the car at the time. Shortly after getting on the car, I saw a man, and he must have lost his head and swung out on the side next to the mill. Instantly the car jumped the track, and I heard Mr. Wiggins groan. I ran to his assistance and found him dead. He was between the car and the mill wall." The evidence tends to prove that the car was derailed some four or five car lengths from where it started, because one of the rails had been moved out of alignment and had been in that condition some eight or ten months. The rails lacked four inches of meeting at the point where the car jumped the track and where the intestate was killed. The spur track generally was in very bad condition. There is also evidence tending to prove that "if the car had not jumped the track the plaintiff's intestate would have been safe on top the car."

148—37

At the conclusion of the evidence the defendant moved to nonsuit. The court overruled the motion. Defendant excepted.

That the defendant is guilty of inexcusable negligence in allowing its track, although a spur track, to get into such dangerous condition, is not a debatable question.

If there is a duty which a railway company owes to its employees, as well as its passengers, it is to provide a reasonably safe track over which its engines and cars may be moved with comparative safety. Of course, we do not mean to hold that spur tracks shall be kept up to the same standard of excellence as the main line, but it is the duty of the company to keep its sidings and spurs in a reasonably safe condition for the traffic done over them. All the evidence shows that this track was in a desperately bad condition, and that the derailment of the car, which was the occasion of the intestate's death, was due to its defective state. At the very point at which the rails were four inches out of alignment the car left the track under such headway that brakes could not stop it. We are not confined here to a *prima facie* case of negligence evidenced by the fact of a derailment, but we have complete proof of a condition of track amounting almost to gross negligence, which caused a derailment resulting in death.

We have also evidence tending to prove that the intestate himself was guilty of negligence, first, in not fastening the brakes before undertaking to couple up the car, and, secondly, in jumping on the rapidly moving car with a view to stop its headway. The question is, What negligence was the proximate cause of his death? It is true that had the intestate not jumped on the car he would not have been killed, and there is a probability that had he tied the brakes the car would not have gotten from his control. The former, while reckless, was in the master's service and for its benefit, for he was endeavoring to save the car and its load from the river. The latter, while the part of wisdom, did not cause the derailment,

any more than the other. The plaintiff's intestate may have committed both acts of negligence and yet have lived uninjured, had the track been in reasonably good condition.

There is no such intermingling and co-operation of these alleged negligent acts of the intestate with the negligence of the defendant as to indicate that the intestate's negligence concurred with that of the defendant and helped to produce the derailment. 7 Am. and Eng. Enc., 374.

Of course, had the car not been derailed and had it gone overboard and had the intestate been drowned, the negligence of the defendant in maintaining so dangerous a track would not have been the cause of his death, but rather the intestate's own careless conduct. But it is incontestible that the defective track caused the derailment, and not the act of the intestate. We have no difficulty in concluding, therefore, that the negligence of the defendant was in any view of the evidence the proximate cause of the derailment.

The next mooted question is, Was the intestate at the time of the derailment guilty of contributory negligence in jumping from the car?

Ordinarily, of course, jumping on or off a moving car is such contributory negligence as bars recovery, and it is so held generally in the courts of this country. Hutchinson on Carriers, sec. 1177, citing many cases. *Browne v. Railroad,* 108 N. C., 34; *Burgin v. Railroad,* 115 N. C., 673.

But the principle does not apply here. Although the intestate risked life and limb in jumping aboard the car, he did it in the endeavor to save it from destruction. There is no evidence that he then knew of the gap in the track which caused the derailment. As to that, he had a right to believe that he was comparatively safe.

When he felt the rapidly moving car was leaving the track, he suddenly learned that he was in a position of great danger. As the sequel proved, it would have been safer not to jump, but under such conditions the law does not exact infallible

judgment, but only reasonable care and prudence. *Hinshaw v. Railroad,* 118 N. C., 1047.

The able and careful Judge who tried this case properly left that to the jury, when he instructed them: "If you find the derailment was caused by the bad condition of the track, but you also find that the plaintiff's death was caused by his act in attempting to get off the car while it was passing between the buildings, and that his conduct in this respect was negligent—that is, that he did not exercise the care that a man of ordinary prudence would have exercised under similar circumstances—then such conduct on his part would be the proximate cause of his death, and you should answer the second issue 'Yes.' "

Upon a careful review of the entire record, we are unable to find any error of which the defendant has just cause to complain.

No Error.