## ROBERTS v. FORT WORTH & D. C. RY. CO. (No. 2377.)

(Court of Civil Appeals of Texas. Texarkana. March 31, 1921. Rehearing Denied April 21, 1921.)

1. Carriers ⬳280(8)—Caretaker on drover's pass entitled to high degree of care.

A caretaker who, under the contract for the transportation of stock, was to be carried on the same train, is a passenger to whom the carrier owes that high degree of care which a very cautious and prudent person would exercise under the same or similar circumstances.

2. Carriers ⬳307(3)—Drover's pass may provide against duty to set down at station or furnish lights.

Though a person riding on a drover's pass is a passenger, the carrier can stipulate in such pass against liability for failure to set the passenger down at a station or to furnish lights for his accommodation; such a provision not being a contract relieving the carrier of liability for its negligence.

3. Carriers ⬳307(6)—Must set drover down at safe place.

Though a carrier may stipulate against liability for failing to set down a passenger riding on a drover's pass at a station or to furnish lights for him, it nevertheless must exercise the high degree of care which it owes to a passenger not to set him down at an unsafe place, or a place so remote from the depot platform used for passengers, as would expose him to manifest danger.

4. Carriers ⬳321(18)—Charge on degree of care to drover held not erroneous.

A charge, authorizing a verdict for a stock caretaker on a finding that he contracted serious sickness from exposure occasioned by the negligence of the railway employees in requiring him to leave the caboose at a place which was unusual or unreasonable under the circumstances, required the jury to consider all the facts and circumstances in evidence with reference to plaintiff's condition, the place and its safety, and its nearness to proper shelter, and was not erroneous.

5. Trial ⬳260(8)—Refusal of requested charge covered by more favorable charge not error.

The refusal of a requested charge, authorizing a verdict for plaintiff upon a finding of negligence of railway employees in requiring plaintiff to leave the caboose in a rain, was not erroneous, where the main charge submitted that issue to the jury even more favorably to plaintiff.

Appeal from District Court, Hunt County; Wm. Pearson, Judge.

Action by J. W. Roberts against the Fort Worth & Denver City Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The appellant, as a caretaker of live stock, was riding on appellee's freight train from Memphis, Tex., to Fort Worth. "When the train reached Fort Worth or a point near Fort Worth, Tex.," as the appellant's petition alleges—

"The employees of the defendant in charge of said train required, directed and compelled the plaintiff to leave the caboose, in which he was riding as a passenger in accordance with the pass, at a point more than a mile from the depot of such defendant, and directed the plaintiff to walk a distance of more than a mile to the car in which his property was situated. Plaintiff was at the time sick, suffering from a boil on the back of his neck, and he protested against leaving said car, stating to the agent of said defendant that he was sick and unable to be exposed to the weather. At the time a hard rain was falling and the weather was extremely cold and the night was dark, and plaintiff became wet and cold and his clothing became soaked and his shoes wet with water and in consequence of which he contracted a severe cold and la grippe."

The defendant answered this suit for damages by general denial, and specially pleaded a written contract of shipment made between the plaintiff and defendant and specially authorizing therein also the transportation of the plaintiff under certain stipulations set out. There was a trial before a jury and a verdict in favor of the railway company.

The shipping contract between appellant and appellee stipulated: (1) That the railway company was to transport in a car the two horses and household goods of appellant "and the parties in charge thereof" "from Memphis Station to Fort Worth"; (2) at Fort Worth, Tex., to deliver the car to a connecting carrier for further transportation to its destination; and (3) "the second party agrees that the said person in charge of the said stock under this contract shall remain in the caboose attached to the train while the same is in motion, and that whenever such person shall leave the caboose car and pass over or along the cars or track they will do so at their own risk of personal injury from any cause whatever; that said first party shall not be required to start or stop its trains or caboose car from the depot or platform or to furnish lights for the accommodation or safety of such person." The ticket or drover's pass issued to appellant as caretaker read: "From Memphis, Texas, to Fort Worth; no return. Issued to J. W. Roberts." The train consisted of an engine and 65 cars with the caboose. The appellant's car and one other like car were next to the engine. The train reached North Fort Worth at 11:55 o'clock p. m. on January 20, and it was cold and raining at the time. At North Fort Worth the track of the appellee crosses the track of the Cotton Belt Railway Company, and near this crossing is the Cotton Belt transfer track. In the words of the witness:

"This Cotton Belt transfer track was right by the crossing of the Cotton Belt and the Fort Worth and Denver. The track comes out from the Fort Worth & Denver and runs up onto the crossing, and joined into that. That was the usual place of setting cars to the Cotton Belt that come in over the line of the Fort Worth & Denver and that were going out on the Cotton Belt, and that was the usual and only way at that time of making delivery of such cars to the Cotton Belt."

The train stopped at the transfer track and the engine switched the two cars next to the engine, one being appellant's car, to the transfer track. The caboose at the time stood back in the yard about 63 car lengths from the crossing north of the Cotton Belt crossing. The caboose was standing about half a mile from the car of appellant set on the transfer track, and about "one mile from the Cotton Belt Station," and "about one-half mile from the freight depot" of the appellee. The testimony of appellee goes to show that appellant voluntarily got off the caboose at the time and place. The appellant, though, testified:

"When we reached Fort Worth, the car was switched off from the line of the Fort Worth & Denver City. It was a right smart while after the train stopped before they come and told me they had switched our car. They told us we would have to get off. I told them it was raining hard and I had a rising on my neck and was in no shape to go out in the rain. They said I had to get off; they had to lock up."

The evidence is conflicting as to whether or not appellant caught cold and was made sick by reason of the rain at the time he got off the caboose. His evidence goes to show serious sickness as a result of being wet. The evidence in behalf of appellee goes to show that appellant was not sick as he claims, beyond the suffering from a carbuncle which he had at the time he left Memphis.

The jury were authorized under the charge to find for appellant if the employees of appellee were guilty of negligence in requiring appellant to disembark at the time and place, and he suffered injuries as the proximate result of negligence. The charge also authorized a finding in favor of appellee if the employees were not guilty of negligence and if the appellant suffered no injuries. The jury's verdict involves a finding, which has support in the evidence, both that appellee was not guilty of negligence and that appellant suffered no injuries.

Evans & Starnes, of Greenville, for appellant.

McMahan, Jones & Jones, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). The court charged the jury, as involved in the exceptions to the charge, as follows:

"(1) The defendant owed to the plaintiff that high degree of care which a very cautious and prudent person would exercise under the same or similar circumstances to protect such passenger from injury, and a failure to use such care would be negligence. However, because of his contract with the defendant, the defendant was not required to stop its train or caboose at depots or platforms or any other particular place, but only at such places as are customary and reasonably convenient for such passengers to disembark from such trains.

"(2) If you believe from the evidence that the employees of the defendant stopped the train in North Fort Worth for the purpose of setting out plaintiff's emigrant car on the transfer track, and that at the time rain was falling and the weather cold and the night dark, and that the employees required the plaintiff to leave the caboose at the place it was then standing, and the place the caboose was then standing was an unusual or an unreasonable place under the circumstances for plaintiff to disembark therefrom, and that in requiring the plaintiff to disembark at said time and place, if they did require him to do so, defendant's

employees were guilty of negligence as that term is above defined, and that on account of being required to leave the caboose at said time and place, if he was required to do so, plaintiff became wet and cold and thereby contracted serious ailments and sufferings, and that the negligence, if any, of the employees in requiring plaintiff to disembark, if they did, was the proximate cause of plaintiff's said injuries, if any, then you will find for the plaintiff.

"(3) If you find from the evidence that the employees of the defendant. did not require the plaintiff to leave said caboose at said time and place, you will find for the defendant; or if you believe that they did require the plaintiff to so leave, if you further believe from the evidence that .the place where defendant's caboose was then standing was not an unusual or an unreasonable place for plaintiff to disembark from said caboose, or if you believe from the evidence that the employees were not guilty of negligence in regard to plaintiff's leaving said caboose at said time and place, or if you believe they were guilty of negligence that such negligence, if any, was not the direct and proximate cause of plaintiff's injuries, if any, then in either event you will find for the defendant; or if you believe from the evidence that plaintiff did not become wet and cold in going from the caboose to his emigrant car, or if he did become wet and cold he was not thereby caused to suffer serious ailments and injuries as alleged, you will find for the defendant."

The charge is assailed as erroneous: (1) In authorizing the railway company to land the plaintiff at a place "customary and reasonably convenient for such passengers to disembark from such train." (2) in making the plaintiff's right to recover to depend upon the finding that "the place" he was required to leave the caboose "was an unusual or an unreasonable place under the circumstances for plaintiff to disembark"; and (3) in relieving the railway company of liability to the plaintiff upon the finding by the jury that "the place" the caboose was stopped "was not an unusual or unreasonable place for plaintiff to disembark from the caboose." The proposition, as well as the argument, is that the charge stresses "the place" at which the caboose was stopped as a customary or usual place for stopping it, without reference to the plaintiff and his condition at the time, and does not submit to the jury the case as pleaded and proven by the plaintiff.

[1-4] The evidence conclusively shows that the undertaking of the railway company was to transport "the live stock described below and the parties in charge thereof" "from Memphis Station to Fort Worth." And appellant, as the party "in charge thereof," stipulated that the railway company shall not "be required to start or stop its trains or caboose car from the depot or platform, or to furnish lights for the accommodation or safety of such person." In these facts the appellant was a passenger on the train, and the court, in the first paragraph, properly defined the degree of care owing by the rail-

way company to the plaintiff. Ry. Co. v. Ivy, 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758. While a caretaker riding on a drover's pass is regarded as a passenger, entitled to a high degree of care for his safety, he is not to be regarded as a passenger to the extent of being entitled to all the privileges and conveniences to which a passenger riding on a passenger train is entitled. And being, as here, a passenger on a freight train, traveling as a caretaker of live stock, the railway company may stipulate, as was done, that such person shall be received and landed at some other place than the depot or platform used for passenger trains. 2 Hutchinson on Carriers, p. 1296; 3 Thompson on Negligence, § 2909; Browne v. Ry. Co., 108 N. C. 34, 12 S. E. 958. Such an agreement is not a contract, as urged by appellant, against the carrier's negligence so as to make it void on that ground. But where there is such an agreement relieving the railway company from stopping the train and caboose at a depot or platform, the railway company must see to it, in the exercise of the high degree of care owing to such passenger, that the place selected for his egress at the termination of the journey is not an unsafe place or a place so remote from the depot or platform used for passengers as would expose him to manifest danger. The primary consideration is the safety of such passenger from peril and injury.

The plaintiff here claims in his petition and evidence that the employees in charge of the train, knowing that plaintiff was ill, negligently exposed him to the rain and cold of the night, causing serious sickness, in stopping the caboose and compelling plaintiff to alight therefrom "at a point more than a mile from the depot of such defendant." Is the court's charge then subject to the objection of appellant? It is believed, without entirely approving the charge as constructed, that it was not subject to the objections made to it. The charge authorized a verdict in behalf of the plaintiff upon the finding by the jury that the plaintiff contracted serious sickness through exposure to rain and cold occasioned by the negligent act of the railway employees in requiring him "to leave said caboose at the point where it was then standing" if "the place the said caboose was standing was an unusual or an unreasonable place under the circumstances for plaintiff to disembark therefrom." If the place the caboose stopped "was an unusual or an unreasonable place under the circumstances" for the plaintiff to disembark, then clearly the railway company had not discharged its duty of exercising a high degree of care for the safety of the plaintiff, and the plaintiff could recover the damages suffered, if he suffered any. The term "under the circumstances" required the jury to consider all the facts and circumstances in evidence with reference to plaintiff—the rain and cold, his con-

dition at the time, the place and its safety, and its nearness to proper shelter. And a jury of ordinary men would reasonably have understood the charge to mean that if the place where the caboose was stopped was not a reasonably safe place to require a sick man to disembark because of the remoteness from shelter and the consequent great exposure to rain and cold, and that it was a failure to exercise a high degree of care for the safety of plaintiff to require him to leave said caboose at "the point it was then standing," plaintiff could recover a judgment. And the jury could reasonably have understood the further part of the charge to mean that if the place the caboose was stopped was a proper or a reasonably safe place under the circumstances for the plaintiff to disembark, then he could not recover, because the railway company would have complied with its contract. Therefore assignments of error Nos. 13 and 24, inclusive, assailing the court's charge, are overruled.

[5] The appellant requested, and predicates error on the refusal to give, a special charge authorizing a verdict for appellant upon a finding by the jury of negligence of the employees in "requiring" the plaintiff "to leave said caboose in said rain." There is no error, we conclude, because the court in the main charge even more liberally submitted the issue to the jury. Assignments of error Nos. 25 and 27 are overruled.

Error is predicated upon sustaining objection to certain questions to and answers by witnesses. It is believed that no harmful error to appellant appears from the matters complained of, and assignments of error from 1 to 8, inclusive, and No. 15, are overruled.

Also assignment of error No. 26 we think should be overruled as not presenting harmful or reversible error.

The judgment is affirmed.