**CAPITAL TRANSIT COMPANY,
a corporation, Appellant**

v.

**Enoch HEDIN, Appellee.
No. 12322.**

United States Court of Appeals,
District of Columbia Circuit.
Argued Jan. 24, 1955.
Decided April 14, 1955.

Petition for Rehearing Denied
June 2, 1955.

42

Mr. Paul R. Connolly, Washington, D. C., for appellant.

Mr. Louis Ginberg, Washington, D. C., with whom Mr. Dorsey K. Offutt, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Enoch Hedin was injured when his automobile was struck by a bus at a road intersection in Maryland. At the trial of his suit for damages, Capital Transit Company's motion for a directed verdict at the close of plaintiff's evidence was denied. Defendant company elected to stand on the motion and introduced no evidence. After a verdict in Hedin's favor, the Transit Company's motion for a judgment *non obstante veredicto* was denied. On this appeal Capital Transit contends the court erred in denying its motions and in

submitting to the jury the questions of negligence, contributory negligence and last clear chance.

The only evidence as to how the accident happened came from the plaintiff himself. At about 4:30 p. m. August 2, 1950, Hedin was driving eastwardly on Hamilton Street in Prince Georges County, Maryland. When he reached the right angle intersection with Ager Road, a dual highway with two 15-foot roadways divided by a grass plot five feet in width, Hedin stopped in obedience to the stop sign which guarded the boulevard. He waited for a break in the southbound traffic on Ager Road coming from his left. When an opening developed, he looked to his right, where he had an unobstructed view more than 600 feet down the northbound roadway of the dual highway, and saw no vehicle approaching. Hedin then proceeded into the intersection. He safely crossed the southbound roadway and the grass plot, but his car was struck by a bus when he entered the northbound roadway. Hedin testified he thought he looked to his right again just before attempting to cross the second roadway, but was not sure he had done so. At any rate, he never saw the bus before the collision.[1]

■ Since the accident happened in Maryland, the standard of conduct prescribed by the law of that state for drivers at road intersections is to be applied here. Tobin v. Pennsylvania R. Co., 1938, 69 App.D.C. 262, 100 F.2d 435; Jonathan Woodner Co. v. Mather, 1954, 93 U.S.App.D.C. 234, 210 F.2d 868. Any act or omission which Maryland has, by statute or judicial decision, declared to be negligence must be so regarded by us, even though under our own procedure it would be for the jury to say whether the act or omission amounted to negligence. This is so because such a legislative or judicial declaration is a part of the standard of conduct prescribed by Maryland, a part of the substantive law of the place of in-

---

[1] Excerpts from Hedin's direct examination:

"Q. * * * [D]id you stop at that stop-sign or not? A. Yes, sir.
* * * * *
"Q. When you stopped, did you come to a complete stop? A. Yes, sir.

"Q. And was there any traffic coming from the right, that is, coming from your right, as you came up the intersection? A. No, I did not see the traffic.

"Q. Now tell us what you did then, after you came to the complete stop? A. I had to stand there quite a while and wait for the traffic on my left, and then when finally I seen them breaking the line I looked to my right and I started across and that is all I can remember. I can't go any further than that.

"Q. When you came to a stop and waited for the traffic that was coming from your left as you have described it, was there any traffic coming from your right? A. No.
* * * * *
"Q. Was there any traffic coming from your right? A. No, I didn't see any traffic.

"Q. Did you look to see if there was any traffic coming from your right before you went across? A. Yes, sir.

"Q. And how far could you see down the highway to your right? A. When there is nothing in the way, well, you can see all the way down to the curve, or past the curve.

"Q. And could you see and did you see all the way down to the curve on that day, as you looked to the right? A. Yes, sir.

"Q. Now, after you had looked to your right and saw all the way to the curve that you have indicated, and there was no traffic that you saw in that area, what did you do then? A. I started across and that is as far as I remember."

The following questions and answers are taken from Hedin's cross-examination:

"Q. Now, when you looked to your left, sir, and saw this break in traffic, then you looked to your right again, didn't you? A. Yes, sir.

"Q. And you still didn't see anything coming? A. No, I did not.

"Q. And you could see down there all the way down to Queens Chapel Road? A. Yes, sir.

"Q. Then, relying upon that, you started out into the intersection? A. Yes, sir.

"Q. And you don't remember anything else? A. No.
* * * * *
"Q. Now, Mr. Hedin, any time after you left the stop sign, any time after you

jury, which it is our duty to apply. Restatement, Conflict of Laws, § 380, Comment 2.[2]

It is necessary, therefore, first to ascertain what standard of conduct the law of Maryland prescribes in such situations, so we may decide whether, as appellant contends, Hedin's conduct so far failed to conform to the standard that he should be held to have been negligent as a matter of law.

■■ Article 66½, § 198, Maryland Code (1951), requires a driver on an unfavored road to come to a full stop at the entrance to a through highway, and to yield the right of way to vehicles approaching thereon. The Maryland Court of Appeals has said this statutory obligation is not discharged by a mere stop at the entrance to the intersection. The obligation extends to the entire passage across the favored highway. Moreover, a favored driver on the through highway is not required to slow down at an intersection, nor to bring his vehicle under control so as to be able to stop, upon the assumption that an unfavored driver will fail in his duty. Belle Isle Cab Co. v. Pruitt, 1946, 187 Md. 174, 49 A.2d 537; Baltimore Transit Co. v. O'-Donovan, 1951, 197 Md. 274, 78 A.2d 647; State, to Use of Frizzell v. Gosnell, 1951, 197 Md. 381, 79 A.2d 530; Ness v. Males, 1953, 201 Md. 235, 93 A. 2d 541. Indeed, the Maryland court has gone so far as to say: "The obligation to yield the right of way is so imperative that even excessive speed by the favored driver, on a highway designed to speed traffic, will not ordinarily be a contribut-

ing factor." Ness v. Males, 201 Md. at page 239, 93 A.2d at page 543.

In the case of State, to Use of Frizzell v. Gosnell, supra, the car in which Frizzell was riding attempted to cross a through highway and was struck by one of two cars which were racing thereon and were said to have been "flying" and "doing eighty." The court said, 197 Md. at page 391, 79 A.2d at page 535:

"* * * If the defendants were racing, and Frizzell saw them, or by the exercise of reasonable care and caution could have seen them in time to prevent the accident as he proceeded across the highway, but did not do so, and the collision resulted, Frizzell was guilty of contributory negligence as a matter of law."

■ The Maryland court has also held an unfavored driver cannot avoid the charge of negligence merely by saying he did not see any car approaching on the through highway. Bush v. Mohrlein, 1948, 191 Md. 418, 62 A.2d 301.

■■ We conclude that under Maryland's statute and judicial decisions, it was Hedin's duty to yield the right of way to the bus approaching on Ager Road, not only at the entrance to that highway, not only at the entrance to the second or northbound roadway, but also throughout his passage across the second roadway on which the bus was traveling. He cannot avoid this duty by saying he looked and did not see the bus. And the excessive speed he attributes to the bus, which he did not see, does not in the circumstances of this case ex-

started to cross this intersection, did you look to your right again? A. I can't remember anything from there on. After I started it doesn't seem like I don't remember anything from there on. I was knocked out completely.

"Q. You don't know whether you looked again to your right or not? A. I think I did. I looked just before I started, I know that.

"Q. Just before you started. Do you recall during your actual passage on Ager Road while your car was actually in motion going over Ager Road, you looking again to your right? A. It could be. To the best of my recollection, I will not say, but I think I did.

"Q. You think you did but you are not sure; is that right? A. I wouldn't swear to it.

"Q. At any rate, Mr. Hedin, you are positive you never saw the bus? A. That is right, sir."

2. Cf. discussion of conflicts rule in Boland v. Love, 1955, 95 U.S.App.D.C. ——, 222 F.2d 27.

cuse him for driving into its path. There was no evidence upon which the last clear chance doctrine could have been applied. The District Court erred in denying appellant's motions. Upon remand, the verdict and judgment thereon should be set aside and judgment should be entered for the defendant.

Reversed and remanded.