**Robert B. JIGGETTS, Appellant,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, a Virginia corporation, Appellee.**

**No. 13362.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 11, 1956.

Decided Nov. 29, 1956.

Mr. Sheldon E. Bernstein, Washington, D. C., with whom Messrs. David G. Bress and William S. Tyson, Washington, D. C., were on the brief, for appellant. Mr. Alvin L. Newmyer, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Robert R. Faulkner, Washington, D. C., for appellee.

Before PRETTYMAN, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Robert B. Jiggetts sued the Atlantic Coast Line Railroad Company to recover damages for injuries sustained when, in trying to board a moving train, he slipped and fell beneath it. Following his counsel's opening statement to the jury, the trial judge directed a verdict for the railroad company, holding that under the law of North Carolina where the accident happened it is negligence *per se* to attempt to board a moving train as Jiggetts did. This appeal followed.

We summarize the opening statement. On June 14, 1953, Jiggetts, a railway mail clerk, alighted from the southbound train on which he was working when it stopped for a scheduled ten-minute service layover in the yards at South Rocky Mount, North Carolina, approximately one mile south of the passenger station at Rocky Mount. As some of the railroad and postal crews were in the habit of doing at this service stop, Jiggetts went to a restaurant, which was from 80 to 100 feet away, to buy sandwiches, cigarettes, etc. for himself and the other postal workers. His order had been filled and he was counting out the money when he heard the train whistle, although it had been there only about five minutes.

Jiggetts was anxious not to be left because he feared if he missed the train he might receive demerits which, added to the 85 he already had, would cause his demotion or discharge. Under postal regulations, 100 demerits would cause reduction in grade and salary and 150 demerits would result in separation from the postal service. His responsibility for the support of his wife and five children made it imperative, he thought, to catch the train and avoid the economic consequences of missing it. As his counsel graphically put it, Jiggetts knew "that his job was on that train, his belongings were on that train, and he had to be on that train to keep his job. * * * [H]e was fully conscious that he had to be on that train, not to get demerits, and not to lose his job or to be demoted."

Impelled by these considerations, Jiggetts flung down the money and ran for the train, even leaving some of his purchases. His counsel said: "And as he got almost at the train, running across the pathway * * * as he got to the train, the train started slowly to pull out, and so he moved to his left, to the north, a few feet, where he could easily board the train as it moved by wherever there would be an open door * * *." As the train was moving "somewhere around six to eight or nine miles an hour," after a car or two had moved by him, one appeared with an open door. He attempted to step up and enter the train through the open door but "he slipped and fell and went under the train * * *."

Jiggetts contends the railroad company was negligent "(1) in departing from South Rocky Mount ahead of schedule and the accustomed stop-over period; (2) in starting to leave without appropriate and timely warning so that plaintiff was denied a reasonable opportunity to board; and (3) in moving with an open door constituting a violation of its own rules and an invitation to plaintiff to board." Whether the defendant was negligent is immaterial for present purposes, because the trial judge held the opening statement showed negligence on the part of Jiggetts but for which he would not have been injured. We are concerned with the correctness of that holding.

■ Since the accident happened in North Carolina, the standard of conduct prescribed by the law of that state for passengers boarding trains is to be applied here.[1] Any act or omission which

1. The parties agree Jiggetts was in the status of a passenger and both cite Grant v. Raleigh & G. R. Co., 1891, 108 N.C. 462, 13 S.E. 209, for the proposition. The Grant case does not expressly so hold, but rather implies the holding which is the general rule. Cf. Chesapeake & O. R. Co. v. Patton, 1904, 23 App.D.C. 113.

North Carolina has, by statute or judicial decision, declared to be negligence must be so regarded by us, even though under our own procedure it would be for the jury to say whether the act or omission amounted to negligence. Capital Transit Co. v. Hedin, 1955, 95 U.S.App. D.C. 351, 222 F.2d 41.

■ The Supreme Court of North Carolina holds that a passenger who is injured while attempting to get on or off a moving train is guilty of negligence as a matter of law and cannot recover for injuries sustained. This was first announced in Lambeth v. North Carolina R. Co., 1872, 66 N.C. 494, 8 Am. Rep. 508. The rule has been followed in a long line of cases, such as Browne v. Raleigh & G. R. Co., 1891, 108 N.C. 34, 12 S.E. 958; Burgin v. Richmond & D. R. Co., 1894, 115 N.C. 673, 20 S.E. 473; Morrow v. Atlanta & C. Air Line Ry. Co., 1903, 134 N.C. 92, 46 S.E. 12; Carter v. Bailey, 1942, 221 N.C. 278, 20 S.E.2d 58.[2] There are exceptions to the rule: for example, it does not apply when the passenger gets on or off a moving train at the direction or suggestion of a railroad employee, unless the speed of the train is so great as to make it obviously dangerous to do so.

■ Having stated that he attempted to board a moving train, the burden was upon Jiggetts to bring himself under some exception to the general rule that such conduct is contributory negligence and will be deemed the proximate cause of any injury received. Browne v. Raleigh & G. R. Co., 1891, 108 N.C. 34, 12 S.E. 958, 963. To get the benefit of an exception to the rule, Jiggetts relies upon several theories:

(a) His brief states "that from the nature of his duties and his experience Jiggetts was accustomed to boarding slowly moving trains" and argues that, therefore, the general rule does not apply to him unless the train was moving so rapidly that a person of ordinary prudence in his position would not attempt to board it—a jury question. He cites Reeves v. North Carolina R. Co., 1909, 151 N.C. 318, 66 S.E. 133, 134.[3] But Reeves was a yard brakeman—a "train hand." Nothing was said in the opening statement to indicate that Jiggetts, who was not a "train hand," was accustomed to getting on and off moving trains, and we see no reason for the trial judge to suppose that his duties as a mail clerk required or permitted him to do so. The Reeves case does not apply.

(b) Jiggetts says the open door constituted an invitation for him to try to board the moving train; but he cites no North Carolina authority so holding and we reject the suggestion as plainly unsound.

(c) It is argued that the pressure of circumstances justified him in attempting to board the train while it was in motion, that is, his fear that if he did not get on he would receive additional demerits which might cause him to be discharged or reduced in grade and salary. However compelling the reason for Jiggetts' act may have seemed to him, it did not justify or excuse his negligence. This was held in a North Carolina case where a father, on the way to the bedside of one of his children who was in a dying condition, leaped from the moving train when it failed to stop at the station of his destination. The court said: "The anxiety of the plaintiff to see his child does not relieve him from the legal consequences of his reckless conduct. * * * It was clearly the

---

2. The Lambeth case dealt with a situation in which a passenger was alighting from a moving train. That the rule there announced is equally applicable to one attempting to board a moving train is shown by the Browne case, and was expressly stated in Morrow v. Atlanta & C. Air Line Ry. Co., 1903, 134 N.C. 92, 46 S.E. 12, 15.

3. There the court said:
"* * * But this rule does not apply with absolute strictness to 'train hands,' brakemen, and the like, who are accustomed, from the nature of their duties, to getting on and off moving trains * * *. Of course, if a 'train hand' attempts to board a train moving so rapidly that a person of ordinary prudence in his position would not attempt it, and is injured, he cannot recover."

proximate cause of the injury and bars a recovery." Burgin v. Richmond & D. R. Co., 1894, 115 N.C. 673, 20 S.E. 473, 474.

(d) It is said the railroad company negligently started the train without giving Jiggetts enough warning to enable him to get aboard. Whether this is relied on to bring him within an exception to the general rule, we are not sure. If so, it is insufficient because the early departure did not justify his reckless act. There was no "sudden jerk of starting"[4] as Jiggetts attempted to get on which caused his injury. Instead, the train "started slowly to pull out" and had attained a speed of from six to nine miles per hour when he made the unfortunate effort to board it.

We hold the trial judge was correct in directing a verdict for the defendant.

Affirmed.

4. Browne v. Raleigh & G. R. Co., 1891, 108 N.C. 34, 12 S.E. 958, 962.