## Richmond

RICHARD P. ROENKE, ETC. v. VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY.

June 10, 1968.

Record No. 6688.

Present, All the Justices.

*H. Clyde Pearson (Raymond R. Robrecht, Jr.; Hopkins, Pearson & Engleby,* on brief), for plaintiff in error.

*Richard C. Rakes (Gentry, Locke, Rakes & Moore,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

This case involves that provision of the Uninsured Motorist Law which requires service of process on an insurance company in any

action instituted by the company's insured against an uninsured motorist.

The defendant, Virginia Farm Bureau Mutual Insurance Company (hereinafter referred to as Company), issued its liability insurance policy on an automobile owned by plaintiff, Richard P. Roenke, of Botetourt County (hereinafter called Roenke), under which policy the Company agreed to pay all sums which Roenke should be legally entitled to recover from the operator of an uninsured automobile.

This policy was in force on January 29, 1962, when Roenke sustained injuries and property damage in an accident that occurred in Tennessee involving Roenke's insured vehicle and another vehicle operated by William Guy Dempsey, a resident of Tennessee, who was an uninsured motorist.

Roenke employed Tennessee counsel to represent him in his action for damages against Dempsey. The Company was notified of the accident and was advised that Roenke was making claim under the uninsured motorist provision of the policy. Correspondence was exchanged between the Company and counsel for Roenke, and an investigation of the accident was made by the Company. An action for damages was instituted by Roenke against Dempsey in the United States District Court, Eastern District of Tennessee, by the filing of a complaint, a copy of which was forwarded to and received by the Company. Prior to that time, the Company advised counsel that after a file review it found nothing to establish liability on the part of Dempsey, and therefore denied liability. The Company was notified by letter from Roenke's attorney of the date set for trial of the case in the federal court. It was heard on March 6-7, 1963, and resulted in a hung jury. On the following day, counsel wrote the Company that the trial had resulted in a hung jury, and further that since the trial, he had learned through "a statement in a publication" that service of process is required upon the insurance company and that this condition had not been met. He inquired if the Company intended to stand on this condition, or if it was considered by the Company to be a condition, and, if so, he requested to be advised in order that he could have the Company served with process before the retrial of the case. The record shows no written response by the Company to these inquiries other than a letter to Roenke's counsel, dated July 1, 1963, stating that its representative had advised counsel that consideration, "without prejudice of course", would be given to any nominal offer to settle the case against Dempsey.

At the second trial, had July 16, 1963, a verdict was recovered by Roenke against Dempsey in the amount of $7500. The Company was notified by letter from Roenke's attorney of the date of the second trial. Upon being notified of the recovery, the Company wrote counsel denying liability for payment of the judgment upon the ground that "Roenke has neither satisfied the uninsured motorist policy provisions nor the statutory provisions of this uninsured motorist coverage".

Thereafter, Roenke employed Virginia attorneys (counsel of record in this case), and motion for judgment was filed against the Company seeking to recover the amount awarded Roenke against Dempsey by the federal court in Tennessee, plus costs and penalty. Various proceedings were had in the court below. All questions of law and fact were submitted to the trial court, and it found in favor of the Company upon the ground that Roenke had not complied with the requirements of service of process on the Company pursuant to Code § 38.1-381 (e) (1) (1966 Cum. Supp.), and that the Company had not waived the statutory requirements of this section. From that judgment Roenke has appealed. His assignments of error challenge the correctness of the trial court's ruling.

For a determination of the questions involved, this court must again consider Code § 38.1-381 (e) (1) which reads in part as follows:

> "Any insured intending to rely on the coverage required by paragraph (b) of this section shall, if any action is instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; . . ."

The provisions of this section are clear and unequivocal, and the statute is mandatory. It says in plain language that *any insured* who intends to rely on the uninsured motorist coverage *shall*, if action is instituted against the owner or operator of an uninsured motor vehicle, *serve* a copy of the process upon the insurance company issuing the policy *in the manner prescribed by law as though such insurance company were a party defendant.*

The notice required to be given an insurance company can be given in only one way, and that is by the service of a copy of the process in the manner prescribed by law. Even service of a copy of the process does not make the insurance company a defendant to the cause of action. The statute simply prescribes a precise and formal method of notification of the commencement or filing of a legal action to a party that is, or may be, interested in the action. Thereafter the insurance company is given the right to file pleadings, and to take such other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name.

The General Assembly could have provided other and different methods of notification, but it did not do so. By this statute it required formal service on the company, the same as if it were a defendant, and provided that a copy of the process must be served before the company could be held liable under the Uninsured Motorist Act. It used language which is exacting and established such service as a condition precedent to entitlement to the benefits of the statute.

Roenke never served on the Company, in the manner prescribed by law, a copy of the process in the case which resulted in his judgment against Dempsey. It appears that Roenke's attorney was not advised of the necessity for service of process on the Company until after the first trial. His explanation for failing to have process served after gaining such knowledge is that he concluded that service was impossible, for the Company was not doing business in the State of Tennessee. Further, he was unwilling to make an affidavit that the Company was so doing business, which affidavit he believed was a condition prerequisite to the issuance of process.

Counsel for the Company argues, and the trial court agreed, that it is not necessary that it be doing business in Tennessee in order for service of process to have been had on it, and that such service could have been had on the proper Tennessee state official appointed to receive service on behalf of nonresident corporations, or on the Company at its home office in Richmond by the United States Marshal, or by the Sheriff of the City of Richmond. It is not appropriate or necessary that we decide whether these suggested methods of service of process were available to Roenke. We are not concerned here with the possibility or impossibility of service. That is not an issue. In this case there was no service of process. There was only notification of the action in the manner that we have detailed above. This was ob-

viously not a compliance with Code § 38.1-381 (e) (1) which admits of no exception or substitute.

Our decision here is controlled by *Creteau v. Phoenix Assurance Co.*, 202 Va. 641, 119 S. E. 2d 336. In that case, the insurance company had actual notice of the time, date and place of trial well in advance of it, and had a representative and counsel in court during the trial of the case but did not participate therein. There the excuse for failure of the insured to serve process on the insurance company in the manner directed by the Uninsured Motorist Law was that the clerk refused to issue the process because he though it improper. This court, speaking through Mr. Justice Snead, held:

> "The language of subsection (e) (1) [of Code § 38.1-381] is clear and unequivocal. It provides that if an insured intends to rely on the coverage required by subsection (b) he '*shall*, if any action is instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; * * * .' (Italics supplied.) It is evident that a copy of the process must be served on the insurance company before it may be held liable under the uninsured motorist act. The language employed is mandatory and establishes a condition precedent to the benefits of the statute unless waived by the insurance company. Plaintiff stated in her amended motion for judgment that a copy of the process was not served upon Phoenix in her action against Rawls. Such being the case she failed to meet the statutory requirements." 202 Va. 641, 643, 644, 119 S. E. 2d 336, 339.

Roenke also contends that the trial court erred in not holding that the Company waived service of process in accordance with the statute and is estopped by its conduct from denying such service. He attacks the action of the court below in striking the testimony of Dick L. Johnson pertaining to an alleged telephone conversation that he had with Joseph C. Russell, an adjuster for the Company, and in refusing to admit into evidence a memorandum to Russell from his superior in the Company's claim department.

Johnson is the attorney who represented Roenke prior to the institution of the case under review. He was called as a witness and reviewed his various correspondence and negotiations with the Company during the pendency of the trials in Tennessee. Over the

objection of the Company, he testified that after the first trial in Tennessee, he had a telephone conversation with Russell, with whom he had had some previous contact; that during the course of this telephone conversation, Russell stated: " '. . . Now that we are officially in the case, would you submit us an offer of compromise?' "; and that following this conversation he conferred with Roenke and submitted an offer to compromise. The Company made no response to the offer.

Russell, when questioned regarding the telephone conversation, testified that: ". . . I would never have made such a statement."; that at the time of his call to Johnson it had begun to look as if the Company "might be pulled into this case"; and that he was instructed to send out a "feeler" to see if there was any possibility of compromising "the thing at a nominal figure". Roenke sought to introduce an "Interoffice Memo" from the Company's Director of Claims to Russell, sent under date of March 13, 1963, prior to which date the Company had received Johnson's letter of March 8th, advising it of the result of the first trial and of Roenke's counsel having discovered the necessity of service of process on the Company. Among other things, the memo noted that Johnson had "finally" learned of his error in not serving process on the Company, authorized Russell to "feel him out as to just what his bottom dollar would be", and intimated that perhaps the Company "should consider settlement at least at a nominal figure at this time".

The court ruled this memo inadmissible and sustained motions to strike the testimony of both Johnson and Russell pertaining to their alleged telephone conversation for the reason that the facts were not alleged in the plaintiff's second amended motion for judgment, thereby constituting a variance between the pleadings and the proof. Roenke, after filing his original motion for judgment against the Company, was permitted by the court to file two amended motions, and in all omitted any allegation regarding the said telephone conversation, or any allegation that Roenke relied upon this conversation or acted to his prejudice by reason thereof. We find no error in the action of the court in striking the testimony of Johnson and Russell and in refusing admission of the memorandum. Furthermore, the record before us, even if we consider the stricken testimony of Johnson and Russell and the memorandum, shows that throughout the entire proceeding in Tennessee, the Company was aware of the statute requiring service of process on it and of Roenke's failure to com-

ply with the statute. It is apparent that it intended to rely upon such failure as a defense, if not properly served.

Roenke contends that the Company's approach amounted to "playing actively cat and mouse with its policyholder". While this might be argued, there is no evidence to show that the Company ever admitted liability, or did anything to indicate that it waived that provision of the statute which requires service of process in the manner prescribed by law. The Company never notified Roenke that it was his responsibility and obligation to follow the statute in serving the Company with process, but it was under no legal obligation to do so. To this effect, see *State Farm Mutual* v. *Duncan*, 203 Va. 440, 446, 125 S. E. 2d 154, 159, where this court said:

> "Nor do we agree with the trial court that when the representatives of the defendant Insurance Company dealt with the representatives of the plaintiff in the effort to settle the dispute between them, it became the duty of the representatives of the Insurance Company to advise the plaintiff that it was relying upon the provisions of the statute rather than the terms and provisions of the policy, and that having failed to so notify the plaintiff, the company has waived or is estopped to rely upon the statute.

> "We have been pointed to no principle of law, nor do we know of any, which requires a party, during negotiations for the settlement of a controversy with his adversary, to notify his adversary that should the negotiations fail and litigation follow, he will rely upon any particular defense which may be available to him."

Roenke was not misled or lulled into inaction by anything that the Company did or failed to do. As heretofore stated, failure to serve process prior to the first trial resulted because counsel was not advised of the statute. Service of process between the first and the second trials was never attempted because he concluded that such was impossible. This conclusion came after research and after consulting with the clerk of the federal court and the law clerk of the federal judge. In making this decision, he relied upon his considered judgment and not upon any telephone conversation with Russell or any previous correspondence or negotiations with representatives of the Company.

In *Creteau, supra,* the contention was also made that an insurance company waived service of a copy of the process. On that point this court cited 19 M. J., Waiver, § 2, pp. 534, 535, where it is stated:

"Waiver is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it.

"Waiver applies to any right conferred by law or contract. This right may or may not be exercised by the person holding it. Being for his own benefit, no one is concerned in its relinquishment save himself. Hence, the owner of such right may waive it expressly, either in writing or by parol, and impliedly by inconsistent conduct; that is to say, a covenantor may by his conduct so lull his covenantee into security as thereby to estop himself from the exercise of a right for which he had contracted.

"A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights. But silence, when there is a duty to speak, may result in the waiver of one's rights."

We find under the facts alleged in the second amended motion for judgment, and from the evidence, that the Company did not expressly, either in writing, by parol, or by inconsistent conduct, waive the service of process upon it in Roenke's action against Dempsey. The most that the evidence shows is that the Company, with knowledge of the accident and pending action in Tennessee, corresponded and had some contact with Roenke's counsel, and intimated an interest in effecting a settlement of the case against Dempsey, if it could be settled for a nominal amount. This is not enough to constitute a waiver of service of process or to estop the Company from relying on the provisions of the statute.

We hold that there has been no compliance with the provisions of Code § 38.1-381 (e) (1) by Roenke and no waiver of such compliance by the Company.

The judgment appealed from is therefore

*Affirmed.*