Estella GRANT et al., Plaintiffs,

v.

**MARYLAND CASUALTY INSURANCE CO., Defendant.**

**Civ. A. No. 1589–67.**

United States District Court District of Columbia Circuit.

Jan. 7, 1969.

Harry W. Goldberg, Morris Altman, Washington, D. C., for plaintiffs.

John L. Ridge, Jr., Welch, Daily & Welch, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

WADDY, District Judge.

On December 5, 1968, this Court granted the defendant's motion for a directed verdict at the close of plaintiffs' case and announced that it would later file a memorandum opinion setting forth the reasons for its action. On December 10, 1968, before the memorandum opinion was prepared, plaintiffs filed a motion for a new trial. Inasmuch as the motion for a new trial reiterates one of the arguments made at the hearing of the motion for a directed verdict, and the Court having concluded that the motion

for a new trial should be denied, this opinion covers both motions.

On May 28, 1964, the defendant, Maryland Casualty Insurance Company, issued to the plaintiff, Joseph J. Grant, a resident of the State of Virginia, a family automobile insurance policy bearing an Uninsured Motorist Endorsement as required by Section 38.1–381 of the Virginia Code.

The policy endorsement provided uninsured motorist coverage to the plaintiff, Joseph J. Grant, and his relatives under certain conditions, in the event of personal injury or property damage sustained by plaintiff, Joseph J. Grant, or by passengers travelling in a motor vehicle operated by him whether or not titled in his name.

On November 14, 1964, while the aforementioned policy and endorsement were in effect, an automobile owned by John Ronayne and operated by Joseph J. Grant was involved in a collision in the State of Virginia with a vehicle operated by one Margarite Burke Tart, an uninsured motorist. Among the passengers in the Ronayne vehicle were the operator's parents, Myrl V. and Estella Grant. As a result of the collision, Joseph, Myrl, and Estella Grant sustained personal injuries and the Ronayne vehicle was damaged. Suit was filed against the uninsured motorist in the United States District Court for the Eastern District of Virginia resulting in judgments against the uninsured motorist in favor of Joseph, Myrl and Estella Grant and John Ronayne. To satisfy those judgments, this action was brought for uninsured motorist benefits allegedly due under the provisions of the aforementioned contract of insurance and endorsement. The defendant is engaged in the casualty insurance business in the District of Columbia and the State of Virginia. Each of the individual plaintiffs is a non-resident.

At the close of plaintiffs' case in chief, defendant moved for a directed verdict pursuant to Rule 50, Federal Rules of Civil Procedure.[1]

Defendant grounded its motion for directed verdict upon plaintiffs' failure to prove compliance with Section 38.1–381 (e) (1) of the Virginia Code.[2] That section which casts insurer and insured in the role of adversaries when uninsured motorist benefits are involved provides in part:

"Any insured intending to rely on the coverage required by paragraph (b) of this section shall, if any action is instituted against the owner or operator of an uninsured motor vehicle, *serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant;* such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this paragraph shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding." (Underscoring supplied).

No evidence was produced by the plaintiffs tending to show that a copy of the process in the Virginia action was served on the defendant in the manner prescribed by Virginia law. It is plaintiffs' position that this statutory requirement was waived by the defendant. The disposition of the motions depends upon a resolution of this issue.

It is defendant's position that choice of law principles dictate that this Court apply the substantive law of Virginia, and as pronounced by the Virginia Supreme Court of Appeals, that law requires a verdict be directed for the

---

1. The motion was conceded as to the plaintiff, John Ronayne, it being agreed that his property damage was not covered by the policy.

2. The section is conceded to have been in effect at the time of the occurrence in question.

defendant. Plaintiffs have presented a bifurcated argument in opposition to the motion. They concede that Virginia law is controlling for the purpose of defining the applicable standards of conduct, but argue: (1) that under Virginia law, a waiver of Virginia Code § 38.1–381(e) (1) is possible,[3] and the question of waiver should be resolved by a jury rather than as a matter of law because the circumstances giving rise to a claim of implied waiver are always unique to the particular case; and (2) in the alternative, that while Virginia substantive law is controlling, the application of that substantive law is a procedural matter governed by the law of the District of Columbia.[4] As an additional prod to this court to apply the law of the forum, plaintiffs point out that all correspondence upon which the claim of implied waiver is based occurred completely within the District of Columbia.[5] Under both arguments, plaintiffs contend that, construing the evidence in a light most favorable to them and permitting them the benefit of all legitimate inferences, reasonable men could differ on the question of waiver.

This Court is of the opinion that it is bound by the law of Virginia as that law has been construed by the Virginia Supreme Court of Appeals. It is true that in Boland v. Love, 95 U.S. App.D.C. 337, 341, 222 F.2d 27, 31 (1955) (an action for damages for personal injuries sustained when the plaintiff was struck by an automobile in Virginia)—our Court of Appeals stated:

"Two facets of the law are commonly encountered in situations such as we have here, (1) 'the law applicable to the case, so far as it concerns the standard of conduct required of the parties, is the law of the place of injury,' and (2) the *application* of that standard must be made according to the law of the District of Columbia, for that is a procedural matter. Consequently, the question whether there is sufficient evidence to take the case to the jury must be determined according to our law." (citing Tobin v. Pennsylvania R. Co., 69 App.D.C. 262, 263, 100 F.2d 435 (1938), certiorari denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939)).

However, the Court of Appeals continued:

"Granting the standard is that of ordinary care, has Virginia by statute or final appellate court decision established whether the particular conduct involved here is or is not negligent, considering all the circumstances? We have found no Virginia case, and none has been cited * * *." *Id*.

Finding no such statute or decision, the Court of Appeals applied the common law of the District of Columbia on the presumption that Virginia's common law would be the same.

The situation is quite different when the foreign jurisdiction's highest appellate court has decided whether the particular conduct involved meets the standard as defined by that jurisdiction's substantive law. In Jiggetts v. Atlantic Coast Line Railroad Company, 99 U.S. App.D.C. 249, 251–252, 239 F.2d 69, 71–72 (1956) our Court of Appeals stated:

"Since the accident happened in North Carolina, the standard of conduct prescribed by the law of that state for passengers boarding trains is to be applied here. Any act or omission

3. Createau v. Phoenix Assurance Company of New York, 202 Va. 641, 119 S.E. 2d 336 (1961).

4. Plaintiffs also contend that the question of waiver itself "may well be a procedural question on which this court is not compelled to follow the law of the state of Virginia." This court, however, deems the question of waiver to be an aspect of performance and, as such, a question of substantive law. Cf., Columbia Fire Ins. Co. v. Boykin & Tayloe, 185 F.2d 771 (4th Cir. 1950).

5. This argument seems to be one urging an application of the District of Columbia's substantive law of waiver. Under the reasoning of Hartford Accident & Ind. Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1934), we reject the argument.

which North Carolina has, by statute or judicial decision, declared to be negligence must be so regarded by us, even though under our own procedure it would be for the jury to say whether the act or omission amounted to negligence." (citing Capital Transit Co. v. Hedin, 95 U.S.App.D.C. 351, 222 F.2d 41 (1955)).

Having ascertained that under the law of North Carolina, as pronounced by the North Carolina Supreme Court, attempting to board a moving vehicle as the plaintiff had done was negligence per se, the Court of Appeals affirmed the trial judge's directed verdict for the railroad company at the close of the plaintiff's opening statement.

In light of the above decisions, this court is of the opinion that if the Virginia Supreme Court of Appeals has applied the Virginia substantive law of waiver to facts all but identical to the facts at bar, and has concluded as a matter of law that such facts do not constitute a waiver of Virginia Code 38.1–381(e) (1), such a holding will be mandatory upon this court. Determination of whether the Virginia high court has passed upon the particular conduct involved here necessitates an examination of the evidence which plaintiffs maintain raises a jury question of implied waiver.

On February 19, 1965, counsel for plaintiffs advised the defendant in writing of the accident referred to above and provided a copy of the accident report. On March 17, 1965, counsel for plaintiffs advised defendant that suit had been instituted against the uninsured motorist in the United States District Court at Alexandria, Virginia, furnished details of the injuries sustained by all plaintiff passengers on the date of the occurrence, and invoked the provisions of the uninsured motorist coverage in the Joseph Grant policy. On September 16, 1965 counsel for plaintiffs furnished a status report to the defendant with respect to the action then pending in Virginia and also referred to the uninsured motorist aspect. On November 18, 1965, the defendant, by letter, acknowledged receipt of counsel for plaintiffs' September 16 letter and requested a copy of the March 17 letter along with pertinent information bearing on the policy. On December 1, 1965, counsel for plaintiffs complied with defendant's request and also furnished the defendant a copy of the complaint filed in federal district court at Alexandria. On December 13, 1965, the defendant was advised by counsel for plaintiffs of an impending pretrial hearing in the Alexandria case, was invited to have its representative attend, and was advised that if any further information was desired, it would be furnished. On March 30, 1966, defendant was advised of the impending trial of the Alexandria case and of the nature of the case. In connection with this advice defendant was further advised that the plaintiffs stood ready to present their claims in any manner as might be requested by the defendant under the provisions of the policy and requested advice as to any specific methods which defendant might prefer. On October 25, 1966, counsel for plaintiffs, addressed a letter to the defendant enclosing a copy of the memorandum opinion filed by the presiding judge in the case and reviewing the contents thereof as well as the interim proceedings which had taken place both in court and by correspondence between counsel for plaintiffs and defendant. In this letter counsel for plaintiffs made demand for payment of the judgments under uninsured motorist coverage and further requested any advice, and held themselves ready to comply with any requirements that the defendant might make in this respect. Judgment was entered against the uninsured motorist in favor of all four plaintiffs on November 29, 1966. On December 19, 1966, counsel for plaintiffs addressed a letter to the defendant enclosing a copy of the judgment and again reviewed all correspondence which had preceded.

The defendant received all correspondence addressed to it to which reference has been made. But for the November

18, 1965 letter from defendant to counsel for plaintiffs, defendant did not acknowledge any of the other correspondence. Following receipt of the letter of December 19, 1966, defendant rejected the plaintiffs' claims for payment of their respective judgments.

With these facts in hand, we turn to case law of the Virginia Supreme Court of Appeals. Creteau v. Phoenix Assurance Company of New York, 202 Va. 641, 119 S.E.2d 336 (1961), was an action against an insurer to recover on an unpaid judgment against an uninsured motorist for injuries sustained in an automobile action. The Virginia Supreme Court of Appeals had before it for review an order of the trial court sustaining the defendant insurer's demurrer to the plaintiff's amended motion for judgment. The demurrer had been sustained on the ground that the plaintiff had not complied with Virginia Code § 38.1–381 (e) (1) in that process had not been served on the defendant in the plaintiff's action against the uninsured motorist. The Supreme Court of Appeals first noted that Virginia Code § 38.1–381(e) (1):

> "is mandatory and establishes a condition precedent to the benefits of the statute unless waived by the insurance company," (119 S.E.2d 336, 339).

and then elucidated the prevailing Virginia standard on the question of waiver:

> " 'Waiver is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it.

> " 'Waiver applies to any right conferred by law or contract. This right may or may not be exercised by the person holding it. Being for his own benefit, no one is concerned in its relinquishment save himself. Hence, the owner of such right may waive it expressly, either in writing or by parol, and impliedly by inconsistent

conduct; that is to say, a covenantor may by his conduct so lull his covenantee into security as thereby to estop himself from the exercise of a right for which he had contracted.

> " 'A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights. But silence, when there is a duty to speak, may result in the waiver of one's rights.' " [6] (*Id.*)

Applying the above standard the Virginia Supreme Court of Appeals affirmed the trial court's order. The court held, as a matter of law, that the defendant insurer's actual notice of the time, date, and place of trial well in advance of the trial plus the presence of its legal representative at the trial in a non-participatory capacity was insufficient to constitute a waiver of service of process.

This seemingly harsh ruling was reaffirmed in Roenke v. Virginia Farm Bureau Mutual Ins. Co., 209 Va. 128, 161 S.E.2d 704 (1968). Again an insured had sued his insurer to recover the amount of a judgment secured against an uninsured motorist. The trial court sitting without a jury found in favor of the defendant insurer on the ground that the plaintiff had not complied with the requirements of service of process on the defendant pursuant to Virginia Code § 38.1–381(e) (1), and further found the insurer had not waived its statutory right to be so served. The Virginia Supreme Court of Appeals affirmed the trial court. Because of the argument by plaintiffs in the instant case that the fact pattern here and in *Roenke* are distinguishable, the operative facts considered by the Virginia Supreme Court of Appeals will be fully presented here as they were in that court's opinion.

> "Roenke employed Tennessee counsel to represent him in his action for damages against Dempsey [an uninsured motorist]. The Company was

---

6. In State Farm Mutual Automobile Ins. Co. v. Duncan, 203 Va. 440, 125 S.E.2d 154 (1962), the Virginia Supreme Court of Appeals held as a matter of law that

an insurer was under no duty to inform an insured seeking to invoke benefits of uninsured motorist coverage that it intended to rely on § 38.1–381(e) (1).

notified of the accident and was advised that Roenke was making claim under the uninsured motorist provision of the policy. Correspondence was exchanged between the Company and counsel for Roenke, and an investigation of the accident was made by the Company. An action for damages was instituted by Roenke against Dempsey in the United States District Court, Eastern District of Tennessee, by the filing of a complaint, a copy of which was forwarded to and received by the Company. Prior to that time, the Company advised counsel that after a file review it found nothing to establish liability on the part of Dempsey, and therefore denied liability. The Company was notified by letter from Roenke's attorney of the date set for trial of the case in the federal court. It was heard on March 6–7, 1963, and resulted in a hung jury. On the following day, counsel wrote the Company that the trial had resulted in a hung jury, and further that since the trial, he had learned through 'a statement in a publication' that service of process is required upon the insurance company and that this condition had not been met. He inquired if the Company intended to stand on this condition, or if it was considered by the Company to be a condition, and, if so, he requested to be advised in order that he could have the Company served with process before the retrial of the case. The record shows no written response by the Company to these inquiries other than a letter to Roenke's counsel, dated July 1, 1963, stating that its representative had advised counsel that consideration, 'without prejudice of course', would be given to any nominal offer to settle the case against Dempsey.

"At the second trial, had July 16, 1963, a verdict was recovered by Roenke against Dempsey in the amount of $7500. The Company was notified by letter from Roenke's attorney of the date of the second trial. Upon being notified of the recovery, the Company wrote counsel denying liability for payment of the judgment upon the ground that 'Roenke has neither satisfied the uninsured motorist policy provisions nor the statutory provisions of this uninsured motorist coverage.'" (161 S.E.2d 704, 705).

Under the facts as presented, the Virginia Supreme Court of Appeals found that the defendant insurer did not "expressly, either in writing, by parol, or by inconsistent conduct" waive its statutory right to service of process in the plaintiff's action against the uninsured motorist, and concluded:

"We hold that there has been no compliance with the provisions of Code § 38.1–381(e) (1) by Roenke and no waiver of such compliance by the Company." (*Id.* at 709.)

Because of the inescapable sameness of the circumstances giving rise to a claim of waiver in *Roenke* and in the instant case, and in light of the foregoing judicial pronouncements by Virginia's highest appellate court, this court is of the opinion that in the case at bar, Virginia courts would hold as a matter of law that defendant Maryland Casualty Insurance Company did not waive its statutory right to be served with process in the action brought by plaintiffs against the uninsured motorist.[7] Accordingly this court has concluded as a matter of law that there has been no waiver of Virginia Code § 38.1–381(e) (1) by the defendant, and no reasonable jury could differ on the question of waiver as that standard has been defined and applied by the Virginia Supreme Court of Appeals. Based upon that conclusion the Court has granted the defendant's motion for a directed verdict at the close of plaintiffs' case and will deny plaintiffs' motion for a new trial.

---

7. Cf. Novas v. Atlantic Coast Line Railroad Company, 104 U.S.App.D.C. 141, 259 F.2d 956 (1958).