**In re Freddie Manual ADKINS, Debtor.**

**Donna J. ALESSIO, Plaintiff,**

v.

**Freddie Manual ADKINS, Defendant.**

**Bankruptcy No. 87–02450–R.**
**Adv. No. 88–0054–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 27, 1989.

Vann H. Lefcoe, McGuire, Woods, Battle and Boothe, Norfolk, Va., for plaintiff.

Jeffrey A. Oppleman, Zwerdling and Oppleman, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This case comes before the Court upon the complaint of the plaintiff, Donna J. Alessio ("Alessio"), seeking a determination that debts owed her by the debtor are nondischargeable in bankruptcy. For the reasons set forth below, the Court finds one of the debts properly discharged, but holds the other nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## FINDINGS OF FACT

Prior to trial the parties stipulated to a number of facts. They agree that on April 3, 1979, Alessio loaned $5,000 to the debtor to allow him to purchase a business. This loan is evidenced by a note agreement of that date signed by the debtor, bearing interest at the rate of 10% per annum, made payable in full on April 3, 1980. On January 1, 1981, Alessio made another loan to the debtor, this time in the amount of $25,000. This money was also to be used by the debtor to acquire a business. Again the debtor signed a note evidencing this loan which bore an interest rate of 18% per annum, and provided for payment in full on September 1, 1981.

The debtor apparently used the funds borrowed from Alessio to purchase a convenience store on Midlothian Turnpike in Chesterfield County, Virginia. The debtor owned a one-half interest in the store, and also owned a one-half interest in a partnership, Landmark Investments, which leased to the store its business location. Sometime in 1983, the debtor sold the convenience store business to unrelated parties who continued to operate it in the same location paying rent to Landmark Investments. In June of 1985, Landmark Investments sold the building and underlying realty to another unrelated entity, and the debtor thereafter had no interest in either the property or the business.

At the trial in this matter Alessio testified that in early 1982, when both loans to the debtor were overdue, the debtor agreed that if she would extend the term of the loans, and forebear from collecting them, he would combine the two loans and pay quarterly-compounded interest at a rate of 18% per annum. Alessio further testified that in June, 1986, after repeated demands for payment had gone unanswered, she spoke to the debtor and notified him that she intended to retain counsel to collect the

loans because almost five years had passed since the due date of the second note.

Alessio stated that during this June, 1986, conversation the debtor asked her to delay any legal action until October 15, 1986, by which time he would have closed on the sale of his convenience store business. The debtor promised to pay the loans out of the proceeds of this sale. In fact, as noted above, the debtor had sold the business in 1983 and the real estate in 1985. Alessio, however, was unaware of these facts until early 1987 when she retained counsel who informed her of the 1985 sale, which was reflected in the land records of Chesterfield County, Virginia. Ms. Alessio subsequently commenced an action against the debtor in Norfolk Circuit Court, which action was stayed by the filing of the debtor's petition in bankruptcy.

## CONCLUSIONS OF LAW

The Court concludes that the debtor's conduct in inducing Ms. Alessio to forebear from collecting on the notes until after the applicable statutes of limitation had expired on the underlying obligations constitutes "actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A). Prior to the debtor's false representation in June, 1986, however, the applicable Virginia statute of limitations had run on the first of the notes, rendering it uncollectible irrespective of the fraud. Finally, contrary to Alessio's contention, the Court concludes that the parties' oral agreement in 1982 to consolidate the notes did not effect a novation commencing a new limitations period. For these reasons the debt for $25,000 owed by the debtor to Ms. Alessio is not dischargeable in bankruptcy, while the other, time-barred debt for $5,000 is properly discharged.

## I. Debtor's Fraudulent Conduct

■ 11 U.S.C. § 523(a)(2)(A) makes nondischargeable "... any debt ... for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by ... false pretenses, a false representation, or actual fraud ..." This Court has previously set out the essential elements which must be proved in order to make out a case under this section. *In re Carneal*, 33 B.R. 922 (Bankr.E.D.Va.1983). An allegation of false representation must be made out by showing: (1) that the debtor made the representation; (2) that at the time of making the representation he knew it was false; (3) that he made the representation with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as a result of the representation having been made. *Id.* at 925. *See also In re Bosselait*, 63 B.R. 452 (Bankr.E.D.Va. 1986); *In re Taylor*, 58 B.R. 849 (Bankr.E. D.Va.1986); *In re Hazelwood*, 43 B.R. 208 (Bankr.E.D.Va.1984).

The Court notes at the outset that no allegations were made in this case that the original loans were fraudulently procured. Apparently the debtor did use the funds obtained from Alessio for the stated purpose of purchasing a convenience store business. Rather, the fraud alleged in this case came later, in the summer of 1986, when the debtor asked Alessio to forebear any efforts to collect on his obligations until October 15, 1986. Based upon the testimony at the trial in this matter, the Court finds as a matter of fact that the debtor requested this forbearance knowing that the statute of limitations would run on the $25,000 note on September 1, 1986. The Court also finds that the debtor achieved Alessio's consent to delay collection by representing to her that he was in the process of selling the convenience store business, and that he would be able to repay her in full from the funds generated by this sale. This representation, of course, was false; the debtor admits in the stipulated facts that his interest in the business had been sold in 1983, and that in the land in 1985.

At the trial in this matter, counsel for the debtor contended that Alessio failed to prove any damages relating to the $25,000 note. Counsel argued that even if, in the summer of 1986, the debtor had not made the representations which resulted in Alessio's forbearance, she would have been unable to recover upon the obligation because

the debtor was at that time hopelessly insolvent.

The Court rejects this argument for two reasons. First, the Court finds that the debtor forwarded no credible evidence concerning his solvency during the summer of 1986 or thereafter. Thus, counsel's contention that Alessio could not have recovered on a judgment taken then is pure speculation.[1]

Second, and more fundamentally, the Court cannot accept any construction of the law under which a self-proclaimed "judgment proof" individual can defraud his creditors into delaying their attempts to recover upon the individual's obligations, and later claim that, since the creditors could have had no satisfaction earlier, they have not been injured.

The Court concludes that Alessio has made an adequate showing that, as to the $25,000 note, the debtor's fraudulent conduct resulted in significant loss and damage. The Court further finds that the debtor failed to provide any credible evidence which would belie Alessio's showing of injury.

■ Based upon the stipulated facts and the testimony presented at trial the Court concludes that as to the $25,000 note Alessio has made each of the required showings by clear and convincing evidence. Therefore, the Court holds that in causing Alessio to forego her rights to enforce the obligations under this note the debtor obtained an extension of credit through false pretenses, false representations and actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A). As to the original note for $5,000, for the reasons set out below, Alessio failed to show that she sustained any loss or damage as a result of the debtor's actions in June of 1986. As such this debt is not nondischargeable.

## II. Virginia Statute of Limitations & Equitable Estoppel

Virginia law provides for a five-year statute of limitations on the enforcement of written contracts, such as the notes in question in this case. Section 8.01–246(2) Va.Code Ann. (1950). This period begins to run from the time payment is due under the terms of the contract. *Clifton D. Mayhew, Inc. v. Blake Construction Co.*, 482 F.2d 1260 (4th Cir.1973).

In the instant case, the first loan made by Alessio to the debtor was evidenced by a note made payable in full on April 3, 1980. The limitations period began to run on that date, and expired on April 3, 1985. After that date the debtor became insulated by the statute of limitations, and Alessio could not have collected on the note in the summer of 1986, regardless of the debtor's fraudulent conduct. For this reason the Court holds that the debtor's false representation concerning his plan to repay this $5,000 debt to Alessio did not result in any loss or damage. By the time she agreed to forebear collection of the $5,000 note the debtor had possessed a complete defense to suit on that note for over a year.

The facts surrounding the second note are significantly different. This $25,000 note came due by its terms on September 1, 1981. Thus, the limitations period did not end until September 1, 1986, and collection of this second note was not barred when the debtor procured Alessio's consent to delay any legal action. Alessio claims that the debtor's fraud equitably estops the debtor from pleading the defense of the statute of limitations.

■ To successfully prove a claim of equitable estoppel under Virginia law the party seeking to defeat a plea of the statute of limitations must prove that: (1) a material fact was falsely represented or concealed; (2) the representation or concealment was made with knowledge of the fact; (3) the party to whom the representation was made was ignorant of the truth of the matter; (4) the representation was made with the intention that the other party should act on it; (5) the other party was induced to act on it; and (6) the party

---

**1.** Insolvency merely describes a circumstance where a debtor's liabilities exceed his assets, or where a debtor cannot pay his debts as they become due. As such, the fact of insolvency, even if proved, does not necessarily mean that no recovery is possible. Indeed, even if the debtor had no assets, recovery is possible out of future income and acquisitions.

claiming the estoppel was misled to his injury. *Coleman v. Nationwide Life Ins. Co.*, 211 Va. 579, 179 S.E.2d 466, 469 (1971); *Trayer v. Bristol Parking*, 198 Va. 595, 95 S.E.2d 224, 231 (1956). The similarity between this test and that applied by bankruptcy courts under § 523(a)(2)(A) is readily apparent. And the same facts which support a finding of nondischargeability under § 523 also lead the Court to conclude that Alessio has proven equitable estoppel. Consequently, the Court holds that, having fraudulently caused Alessio to run afoul of the statute of limitations, the debtor cannot now assert the statute in his defense. *See Boykins Narrow Fabric Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 266 S.E.2d 887 (1980).

## III. Oral Consolidation of the Notes

At trial, Alessio argued that the limitations period should have closed on September 1, 1986, the bar date for the second note, for both obligations as a result of the parties' agreement to consolidate the notes in early 1982. Although the Court finds credible Alessio's account of this agreement, the Court concludes that, because the agreement was never reduced to a signed writing, its enforcement is barred by Virginia's statute of frauds.

Virginia law provides that:

No action shall be brought ... [u]pon any agreement that is not to be performed within a year ... [u]nless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby ...

Section 11–2 Va.Code Ann. (1950). The two notes originally signed by the debtor were enforceable contracts under this statute of frauds. The parties' subsequent agreement to combine the two notes, however, was oral, and the debtor, the "party to be charged," did not sign a written memorandum evidencing the consolidation. These defects render the agreement unenforceable.

It is true that Virginia law permits the revitalization of contracts which have become unenforceable under the applicable statute of limitations. The statutory requirements are strict, however, and are closely related to the statute of frauds.

If any person against whom a right of action has accrued on any contract ... promises, *by writing signed by him* or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action.

Section 8.01–229(G)(1) Va.Code Ann. (1950) (emphasis added). Thus, in order to restart the limitations clock a promise to pay a debt already owed must be in writing. *Guth v. Hamlet Associates*, 230 Va. 64, 334 S.E.2d 558 (1985). *See also Gwinn v. Farrier*, 159 Va. 183, 165 S.E. 647 (1932) (interpreting a similar earlier statute).

Since Alessio's agreement to forebear collection efforts and to combine the debtor's obligations was never reduced to a writing signed by the debtor, the first note for $5,000 cannot be rescued from the statute of limitations. The Court notes that Alessio did not raise any allegations of fraud surrounding the agreement to consolidate the notes, and thus the Court does not reach the issue of whether the debtor could have been equitably estopped to plead the statute of frauds in regard to this agreement.

For the reasons stated above the Court concludes that the debtor obtained an extension of credit through false pretenses, false representations and actual fraud within the meaning of § 523(a)(2)(A). Applicable nonbankruptcy law, however, resulted in one of the debtor's obligations being unenforceable at the time of the debtor's fraudulent act, and, as such, the Court determines this time-barred debt for $5,000 to be properly discharged in bankruptcy. The second obligation, for $25,000, the Court holds to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

An appropriate Order will issue.