**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1514**

PERSAUD COMPANIES, INC.,

Plaintiff – Appellee,

v.

THE IBCS GROUP, INC.; EDMUND C. SCARBOROUGH; STEVEN GOLIA,

Defendants – Appellants.

**No. 10-1518**

PERSAUD COMPANIES, INC.,

Plaintiff – Appellant,

v.

THE IBCS GROUP, INC.; EDMUND C. SCARBOROUGH; STEVEN GOLIA,

Defendants – Appellees.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge.  (1:09-cv-00094-GBL-IDD)

Argued:  March 23, 2011                Decided:  April 25, 2011

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** David Martin Buoncristiani, JONES DAY, San Francisco, California, for Appellants/Cross-Appellees. Christopher Mayfield Brown, SEEGER FAUGHNAN MENDICINO, PC, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Paul W. Berning, HOWREY, LLP, San Francisco, California, Laura R. Thomson, HOWREY, LLP, Washington, D.C., for Appellants/Cross-Appellees. Seth A. Robbins, SEEGER FAUGHNAN MENDICINO, PC, Washington, D.C., for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The IBCS Group, Inc., challenges the district court's grant of summary judgment in favor of Persaud Companies, Inc., on Persaud's fraudulent inducement and false advertising claims. We agree with IBCS that Persaud has failed to establish a claim for fraudulent inducement under Virginia law. We also agree with IBCS that the grant of summary judgment on the false advertising claim was improper. Therefore, we remand for further proceedings.

## I.

On October 3, 2008, Persaud Companies, Inc. (Persaud), signed a $3.5 million subcontract for work on a border fence project in Texas. The subcontract required Persaud to post payment and performance bonds. Although Persaud had used the same corporate surety on its previous jobs, on this occasion Persaud's bond brokers recommended that the company obtain bonds from Edmund Scarborough, an individual surety, and his risk management company, IBCS Group.

During the negotiations with IBCS, two key issues arose. First, two of Persaud's brokers suggested that Persaud have the general contractor pre-qualify the bonds, ensuring that the bonds would be accepted. Second, Persaud's brokers asked IBCS how it would respond if the general contractor rejected the

3

bonds-i.e., whether IBCS would provide a refund of any bond premium paid by Persaud. With regard to this second issue, the brokers were referred to IBCS' brochure about Scarborough's bonds. The brochure contains a Question and Answer section, which includes the following:

> Q. What happens if a bond is rejected by an obligee?
>
> A. We intend to pre-qualify all bonding requests to minimize the possibility of bond rejection. However, we will reverse a transaction if a bond is promptly rejected.

(JA at 44).

Persaud entered into a General Agreement of Indemnity (the Agreement) with Scarborough on December 29, 2008. The Agreement specifies, with regard to payment, that "[t]he full initial fee is fully earned upon execution of the BOND and will not be refunded, waived or cancelled for any reason." (JA at 51). The Agreement also notes that, "[t]his Agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed to in writing, and signed by Surety." (JA at 53).

Persaud authorized release of the bonds ten days later, paying a bond premium of $121,557. Eventually, the general contractor rejected the bonds because of its concern over Scarborough's assets. Thereafter, the general contractor waived the bond requirement for Persaud and permitted it to work on the

4

project while issuing Persaud a "deductive change order." (JA at 1190). Persaud, meanwhile, contacted IBCS in a timely manner to request a refund. In response, IBCS referred Persaud to the Agreement's language specifying that all payments were nonrefundable and, accordingly, denied Persaud's request. Scarborough later indicated that, although he had granted more than twenty refunds in the past, he did not grant Persaud a refund because (1) he was led to believe the bonds would be accepted; (2) Persaud retained the subcontract; and (3) Persaud did not have to purchase replacement bonds.

After IBCS refused Persaud's refund request, Persaud responded by filing this action, alleging claims of breach of contract, fraud, fraud in the inducement, and false advertising against IBCS. Persaud requested actual and punitive damages. The district court dismissed the breach of contract and fraud claims. Following discovery, on cross-motions, the court granted summary judgment in favor of Persaud on the fraudulent inducement and false advertising claims, and granted summary judgment in favor of IBCS on the issue of punitive damages. The court awarded Persaud damages of $121,557, the total amount of the bond premium.

On appeal, IBCS challenges the award of summary judgment on both the fraudulent inducement and false advertising claims.[1] Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's order granting summary judgment de novo. Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011).

## A. Fraudulent Inducement

Under Virginia law, "a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract." George Robberecht Seafood, Inc. v. Maitland Bros. Co., 255 S.E.2d 682, 683 (Va. 1979)(internal quotation marks omitted). "Fraud in the inducement of a contract is also ground for an action for damages." Id. A plaintiff asserting a cause of action for fraudulent inducement bears the burden of proving by clear and convincing evidence the following elements: "(1) a false representation, (2) of a material fact, (3) made

---

[1] Persaud also noted a cross-appeal, contesting the district court's denial of its requests for punitive damages and attorney's fees. Because we are vacating the awards of summary judgment in favor of Persaud, we need not address these issues at this time.

intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994).

Applying this standard, IBCS contends that, because Persaud had access to the Agreement prior to signing it—and thus had the ability to read the provisions regarding a refund—the promise of a refund in the marketing brochure could not have reasonably induced Persaud into signing the Agreement. We agree. Given the unequivocal contract language, Persaud's reliance on the statements in the brochure was unreasonable. As the Supreme Court of Virginia has explained:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

Costello v. Larsen, 29 S.E.2d 856, 858 (1944) (internal quotation marks omitted); see also Johnson v. Washington, 559 F.3d 238, 245 (4th Cir. 2009) (affirming summary judgment in favor of the defendant by noting that, "[e]ven assuming" the defendant misled the plaintiff, "the documents that [the

7

plaintiffs] signed plainly stated the terms of the transaction and more than corrected any misleading oral statements").

Persaud offers several alternative reasons for affirmance, none of which is persuasive. For instance, Persaud contends that the Agreement itself does not provide IBCS's actual refund policy because Scarborough admitted that he has given more than twenty refunds over the past several years. While this is factually correct, legally IBCS and Scarborough are free to enforce the contractual refund provision or waive it as they see fit. See Roenke v. Virginia Farm Bureau Mut. Ins. Co., 161 S.E.2d 704, 709 (Va. 1968) (noting that waiver "may or may not be exercised by the person holding it").[2]

In sum, Persaud cannot establish, by clear and convincing evidence, that it reasonably relied on the brochure or any oral statements by IBCS because the Agreement clearly stated that the bond premium was nonrefundable. Accordingly, we vacate the award of $121,557 in favor of Persaud and direct the district court, on remand, to enter summary judgment in favor of IBCS on this count.

---

[2] In a similar vein, Persaud suggests that the waiver policy is applied irrationally and subjectively. To the extent this is even relevant, IBCS put into evidence declarations that it considered each refund request in good faith, and Persaud did not come forward with any contrary evidence.

B. False Advertising

We next address IBCS's argument that the district court erred in granting summary judgment to Persaud on the false advertising claim. Virginia Code § 18.2-216 prohibits the use, in any advertisement, of "any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading" if the advertisement is made with the "intent to sell" or "to induce the public" to enter into an obligation. See Henry v. R.K. Chevrolet, Inc., 254 S.E.2d 66, 67-68 (Va. 1979). Section 18.2-216 also "subjects the defendant to an action for damages [under Va. Code Ann. § 59.1-68.3] by any person who suffers loss as the result" of a statutory violation. Id. at 67; see also Klaiber v. Freemason Associates, Inc., 587 S.E.2d 555, 559 (Va. 2003) ("[Section 59.1-68.3] by its express terms requires, however, that the plaintiff must 'suffer[ ] loss' in order to recover damages."). As a "penal statute," §18.2-216 "must be construed strictly" and should not "be extended by implication, or be made to embrace cases which are not within its letter and spirit." Henry, 254 S.E.2d at 68 (internal quotation marks omitted).

The Supreme Court of Virginia has noted two important distinctions between fraud and false advertising. First, a fraud claim requires a showing that a representation was false, while false advertising requires a showing that a statement was

9

"untrue, deceptive or misleading." <u>Parker-Smith v. Sto Corp.</u>, 551 S.E.2d 615, 619 (Va. 2001). Second, "in fraud, the misrepresentation must relate to a present or pre-existing fact; it cannot be predicated on unfulfilled promises or statements as to future events. In contrast, the misrepresentation in a false advertising claim does not have to relate to a statement of present or pre-existing fact. It can be just a promise." <u>Id.</u> (internal citation and quotation marks omitted). <u>See</u> <u>also</u> Va. Code Ann. § 18.2-216 ("promise, assertion, representation or statement of fact").

The district court concluded that the marketing brochure qualified as an advertisement under the statute and was misleading. On this basis alone, and without considering whether Persaud "suffer[ed] loss" as a result of the advertisement, the district court awarded summary judgment. We agree with the district court that the marketing brochure satisfies the statutory requirements of a false advertisement: the brochure is an advertisement under the statute and it is—at a minimum—misleading or deceptive. As IBCS notes, however, the district court did not consider whether the brochure made Persaud "suffer loss," that is, whether the advertisement caused any actual injury. Because of this failure, we vacate the grant of summary judgment in favor of Persaud on this claim as well.

10

On remand, the district court must determine whether Persaud can satisfy this statutory requirement.[3]

### III.

Accordingly, we vacate the award of $121,557 in favor of Persaud and vacate the grant of summary judgment on Persaud's claims for fraudulent inducement and false advertisement. On remand, the district court is instructed to grant summary judgment in favor of IBCS on the fraudulent inducement claim and to consider whether Persaud suffered loss as a result of IBCS's false advertisement. If the district court finds in Persaud's favor on those issues, it is free to assess appropriate damages.

VACATED AND REMANDED

---

[3] We note that IBCS urges us to simply answer the question of whether Persaud suffered loss because of the advertisement in the first instance. While we recognize our discretion to do so, we decline to exercise that discretion in this case.